IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| JAIME ALBERTO DELGADO-BOJORQUEZ, OSCAR JOVANNY DIAZ-RAMIREZ, JOSE ANIEL LOPEZ-VALDEZ, REY DAVID AVIÑA-COTO, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>KB CUSTOM AG SERVICES, LLC, and KYLE BEAUCHAMP<br><br>        Defendants | CIVIL ACT. NO.: _____<br><br>RULE 23 CLASS<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1.      Plaintiffs were truck drivers employed by Defendants to transport animal feed, primarily silage and other types of forage, over public roads to Defendants' clients' crop storage locations in the growing regions of Texas, Kansas, and Colorado.

2.      Plaintiffs bring this complaint on their own behalf and on behalf of others similarly situated to assert their rights to minimum wage and overtime under federal law, legally required wages and overtime under the terms of their employment contracts and, alternatively, damages pursuant to the law of quantum meruit.

3.      Plaintiffs Jaime Alberto Delgado-Bojorquez, Oscar Jovanny Diaz-Ramirez, Jose Aniel Lopez-Valdez, and Rey David Aviña-Coto were all H-2A workers brought into the United States by Defendants as truck drivers.  Plaintiffs and others similarly situated were employed subject to the terms of written contracts. However, during Plaintiffs' employment, Defendants violated the written contracts and the regulations which they incorporated.  Defendants' violations caused Plaintiffs and others similarly situated economic harm, including substantial lost wages, denied

1

Plaintiffs' fair wages for the work they performed, and violated both state and federal wage and employment laws.

4.    Plaintiffs brings this action to vindicate their rights and those of others similarly situated, recover their unpaid wages, interest and liquidated damages on behalf of themselves and a class of workers similarly situated.

## II. JURISDICTION AND VENUE

5.    This Court has jurisdiction of this action pursuant to:

    a.  28 U.S.C. § 1331 (Federal Question);

    b.  29 U.S.C. § 1337 (Interstate Commerce); and

    c.  28 U.S.C. § 1367 (Supplemental).

6.    This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal claim that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants are a Colorado corporation and a Colorado resident, and because, on information and belief, Defendants prepared the contracts at issue in Colorado, and executed the contracts from Colorado.

## PARTIES

8.    Plaintiff Jaime Alberto Delgado-Bojorquez worked for Defendants pursuant to H-2A visas in the 2022 and 2023 seasons.

9.    Plaintiff Oscar Jovanny Diaz-Ramirez worked for Defendants pursuant to a H-2A visas in the 2022, 2023, and 2024 seasons.

10.    Plaintiff Jose Aniel Lopez-Valdez worked for Defendants pursuant to a H-2A visas in the 2022 and 2023 seasons.

11.     Plaintiff Rey David Aviña-Coto worked for Defendants pursuant to an H-2A visa in the 2023 season.

12.     Plaintiffs were employed as commercial truck drivers.

13.     Plaintiffs consents to seek unpaid wages pursuant to the FLSA are attached to this Complaint as Exhibit A.

14.     Defendant KB Custom Ag Services, LLC is a Colorado limited liability corporation with a principal place of business at 239 East 4th Street, Ault, Colorado 80610.

15.     Defendant KB Custom Ag Services, LLC is a labor contractor providing swathing and combining along with transport of forage and other animal feed for its dairy and animal feed lot customers.

16.     Defendant KB Custom Ag Services, LLC did not own, nor grow, the agricultural products transported by the Plaintiffs and other similarly situated truck drivers.

17.     Defendant KB Custom Ag Services, LLC has over $500,000 in annual revenue.

18.     Defendant Kyle Beauchamp is a Colorado resident and is both the day-to-day manager and a member-manager of Defendant KB Custom Ag Services, LLC.  Defendant Beauchamp is also the registered agent for KB Custom Ag Services, LLC and may be served at 340 S. Elm Ave, Eaton, Colorado 80615.

DEFENDANTS' PARTICIPATION IN THE H-2A VISA PROGRAM

19.     The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185. An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

20.     Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122. The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

21.     The relevant job orders were filed through the Colorado Department of Labor and Employment and the Texas Workforce Commission.

22.     In each applicable season, Defendant KB Custom Ag Services, LLC either directly or through an agent submitted job orders to the U.S. DOL.

23.     The KB Custom Ag Services, LLC job orders were signed by Mary Beauchamp.

24.     On information and belief, the job orders submitted by Defendant KB Custom Ag Services, LLC were prepared, and/or reviewed by employees of Defendants at its offices in Colorado.

25.     In 2021, Defendants submitted a job order listing the job title as "Agricultural Equipment Operator" for 200 workers with employment dates of March 1, 2021 to December 28, 2021.

26.     In 2022, Defendants submitted a job order listing the job title as "Agricultural Equipment Operator" for 285 workers with employment dates of March 1, 2022 to December 28, 2022.

27.     In 2023, Defendants submitted a job order listing the job title as "Agricultural Equipment Operator" for 375 workers with employment dates of March 1, 2023 to December 28, 2023.

28.     In 2024, Defendants submitted a job order listing the job title as "CDL Truck Driver" for 310 workers with employment dates of March 1, 2024 to December 28, 2024.

29.     In 2025, Defendants submitted a job order listing the job title as "Agricultural Equipment Operator" for 600 workers with employment dates of March 1, 2025 to December 28, 2025.

30.     The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted employment contracts for domestic workers and for foreign workers on H-

2A visas, including Plaintiffs, and all others similarly situated. 20 C.F.R. § 655.103(b) (definition

of "work contract").

31.     The H-2A program, its implementing regulations, and the applicable job orders here

require that foreign workers be paid "the same level of minimum benefits, wages, and working

conditions which must be offered to U.S. workers[.]" 20 C.F.R. § 655.122(a).

32.     The H-2A employment contracts at issue here incorporate a regulatory definition of

employer found at 20 C.F.R. § 655.103(b) and contained the promise to "comply with applicable

Federal, State and local law and regulations." 20 C.F.R. § 655.135(e).

33.     In the employment contracts, the Defendants promised that each worker would earn at

least the AEWR [Adverse Effect Wage Rate], the prevailing hourly or piece rate wage, or the

federal or state minimum wage, whichever is higher, for all hours worked in the payroll period.

34.     In the employment contracts, Defendants also promised that that the positions complied

with all employment-related laws.

35.     The job orders also promised that the "job offer discloses all deductions not required by

law which the employer will make from the worker's paycheck and all such deductions are

reasonable, in accordance with 20 CFR 655.122(p) and 29 CFR part 531."

36.     By participating in the H-2A program and importing workers from abroad, the

Defendants were also contractually bound to abide by certain wage and payroll requirements,

including those at 20 C.F.R. §§ 655.120(a), 655.122(a), 655.122(c), 655.122(j), 655.122(k),

655.122(l), and 655.103(b).

## FACTUAL ALLEGATIONS OF THE CLASS REPRESENTATIVES

37.     Plaintiffs picked up silage or other row crop forage or grain in fields and then drove the

harvested crop to storage locations at the dairies or feedlots which had hired Defendants as a

labor contractor.

38.    After picking up a load at the field, Plaintiffs and others similarly situated operated their assigned trucks on county roads, state roads and highways to transport the crop to the dairy or animal feed location within the state in which the crop had been harvested.

39.    The applicable required hourly wage for the position in which Defendants employed Plaintiffs was the median wage for Heavy and Tractor-Trailer Truck Drivers for the region in which Plaintiffs and others similarly situated were employed.

40.    The vehicles Plaintiffs and others similarly situated operated were tractor trailers with a gross vehicle weight well in excess of 26,000 pounds and which required commercial drivers' licenses.

41.    In 2024, Defendants listed the position for truck drivers separately in a job order describing the job as "CDL Truck Driver."

42.    In prior years, including 2021, 2022, and 2023, Defendants listed the position in their job orders as "Agricultural Equipment Operator" even though Plaintiffs' position in those years and those of more than a hundred other similarly situated workers was actually "truck driver" for which Defendants required applicants to have a commercial drivers' license.

43.    The definition for the job of "Agricultural Equipment Operator" with Standard Occupational Classification code 45-2091 is: "Drive and control farm equipment to till soil and to plant, cultivate, and harvest crops. May perform tasks, such as crop baling or hay bucking. May operate stationary equipment to perform post-harvest tasks, such as husking, shelling, threshing, and ginning."

44.    Plaintiffs never performed the tasks of an "Agricultural Equipment Operator."

45.    For work in Colorado during the relevant time period, the highest applicable mean wage was the wage for the Greeley Colorado Metropolitan Statistical Area.

46.    For work in Kansas during the relevant time period, the highest applicable mean wage was the wage for the Kansas Nonmetropolitan Statistical Area.

47.     For work in Texas, during the relevant time period, the highest applicable mean wage
was the wage for the West Texas Region Nonmetropolitan Statistical Area.

48.     Defendants sought to avoid paying the applicable truck driver wage rate by including the
truck driving positions within H-2A agricultural job orders for "Agricultural Equipment
Operators" when the positions-- hauling silage to off-farm storage locations-- were non-
agricultural in nature and were simply truck driver positions requiring commercial drivers'
licenses.

49.     Defendants knew that the work was non-agricultural in nature for H-2A purposes because
Defendants were not growers of the crops being transported and because the U.S. Department of
Labor had so informed H-2A employers that truck drivers employed by labor contractors like
Defendant KB Custom Ag Services, LLC did not qualify as agricultural workers.

50.     Defendants knew listing truck driver positions under the Agricultural Equipment
Operator job code was improper and would result in unlawfully low wages as Defendant KB
Custom Ag Services, LLC had previously been sued for paying a truck driver under the
Agricultural Equipment Operator job code.

51.     Plaintiffs' positions and those of others similarly situated were not agricultural equipment
positions, but instead were Heavy and Tractor-Trailer Truck Driver positions operating tractor-
trailers on roads and highways hauling harvested silage to Defendants' clients' local storage
locations.

52.     Defendants knew that the wages they were offering were not the appropriate and legally
required wages for the work being performed.

53.     Defendants required Plaintiffs and others similarly situated to purchase U.S. cell phones
with a local number and to pay for cellular service.

54.     Defendants required Plaintiffs and others similarly situated to operate cellular telephone
applications relating to Defendants' time keeping on the U.S. cell phones.

55.     Defendants required Plaintiffs and others similarly situated to operate a cellular telephone application, WhatsApp, on their U.S. cell phones in order to receive work information and directions for truck drivers, including daily instructions, from Defendants' dispatchers, crew leaders, and supervisors.

56.     The costs of telephones and telephone service reduced the wages of Plaintiffs and others similarly situated; this reduction in wages was not disclosed by Defendants in the written employment contracts.

57.     Plaintiffs and others similarly situated were offered work as truck drivers and were required to be licensed as truck drivers.

58.     Defendants required Plaintiffs and others similarly situated to obtain, at their own cost, Mexican international truck driving licenses which would allow Plaintiffs to operate Defendants' trucks in the U.S. after Defendants provided Plaintiffs with work visas.

59.     When employed in the U.S., Plaintiffs and others similarly situated were employed as over-the-road truck drivers hauling silage and forage to be fed to livestock to storage locations for dairies and animal feed lots.

60.     Plaintiffs and others similarly situated were promised in their written employment contracts, among other things:

  a.  Pay for all hours worked;

  b.  Pay at the highest applicable hourly wage rate;

  c.  Pay that was equal for domestic and foreign workers performing the same work activities;

  d.  A copy of the work contract;

  e.  Compliance with the applicable provisions of federal nonimmigrant temporary visa law; and

  f.  Payment of wages in compliance with state and federal law.

    g.  No deductions from wages beyond those listed in the employer's written employment contracts.

61.    On information and belief, Defendants did not pay the legally required wage rates to any truck driver.

62.    The legally-required wage rate for truck drivers in 2021 for the West Texas Region Nonmetropolitan Area was $21.49 beginning in July of 2020.

63.    The legally-required wage rate for truck drivers in 2021 for the Kansas Nonmetropolitan Area was $21.05 beginning in July of 2020.

64.    The legally-required wage rate for drivers in 2021 for the Greeley Colorado MSA area was $25.01 beginning July of 2020.

65.    The legally-required wage rate for truck drivers in 2021 for the West Texas Region Nonmetropolitan Area was $22.84 beginning in July of 2020.

66.    The legally-required wage rate for truck drivers in 2021 for the Kansas Nonmetropolitan Area was $21.60 beginning in July of 2020.

67.    The legally-required wage rate for drivers in 2021 for the Greeley Colorado MSA area was $25.81 beginning July of 2020.

68.    The legally-required wage rate for truck drivers in 2022 for the West Texas Region Nonmetropolitan Area was $22.22 beginning in July of 2022.

69.    The legally-required wage rate for truck drivers in 2022 for the Kansas Nonmetropolitan Area was $22.27 beginning in July of 2022.

70.    The legally-required wage rate for drivers in 2022 for the Greeley Colorado MSA area was $24.99 beginning July of 2022.

71.    The legally-required wage rate for truck drivers in 2023 for the West Texas Region Nonmetropolitan Area was $24.20 beginning in July of 2023.

72.     The legally-required wage rate for truck drivers in 2023 for the Kansas Nonmetropolitan
Area was $22.90 beginning in July of 2023.

73.     The legally-required wage rate for truck drivers in 2023 for the Greeley Colorado MSA
area was $26.14 beginning July of 2023.

74.     The legally-required wage rate for truck drivers in 2024 for the West Texas Region
Nonmetropolitan Area was $24.55 beginning July of 2024.

75.     The legally-required wage rate for truck drivers in 2024 for the Kansas Nonmetropolitan
Area was $24.73 beginning in July of 2024.

76.     The legally-required wage rate for truck drivers in 2024 for the Greeley Colorado MSA
was $27.68 beginning July of 2024.

77.     Plaintiffs and others similarly situated were required to complete field tickets or logs of
their daily truck loads delivered.

78.     Defendants paid Plaintiffs the agricultural Adverse Effect Wage Rate for agricultural
field work, a wage rate which was lower than the truck driver wage rate owed, and which was
inapplicable as Plaintiffs' work was nonagricultural in nature and involved driving trucks on
public roads for Defendants who were labor contractors.

79.     As a result of their practice of failing to pay the legally required wage rate for the work
performed, Defendants, without justification, did not pay wages in keeping with applicable wage
statutes and the written employment contracts, and paid wages below those required by
applicable law and the employment contracts.

**CLASS ACTION ALLEGATIONS**

80.     **Proposed Class.** Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of
Civil Procedure on behalf of the following Class:

All individuals employed by Defendants between March 1, 2021 and the date of
judgment in this matter as a truck driver or in a tractor-trailer truck driver position.

81.     There is a well-defined community of interest in the litigation and the class is

ascertainable.

82.     **Numerosity:** The Plaintiff Class is so numerous that the individual joinder of all

members is impractical.  While the exact number of class members is unknown to Plaintiffs at

this time, Plaintiffs believe that the class consists of more than 200 individual employees. The

names and addresses of the Class Members are available from Defendants. Notice can be

provided to the Class Members via mail, Facebook, WhatsApp, radio and postings using

techniques and a form of notice similar to those customarily used in class action lawsuits of this

nature involving foreign workers.

83.     **Typicality:** Plaintiffs' claims are typical of the claims of the class members they seek to

represent in that they arise from Defendants' failure to conform their wage and hour practices to

the requirements of federal law, the uniform employment contracts and the H-2 visa program

regulations, and the applicable wage requirements resulting in injury to Plaintiffs and the other

putative class members.

84.     **Common Questions Predominate**:  The questions raised by this Complaint are of

common or general interest to the members of the Plaintiff Class, who have a well-defined

community of interest in the questions of law and fact raised in this action.  Common questions

of law and fact exist as to all members of the Plaintiff Class and predominate over any questions

that affect only individual members of the Class. The common questions of law and fact

applicable to the classes include, but are not limited to:

   a.   Whether the Defendants paid the Plaintiff Class the legally required wage for the

        position of Heavy and Tractor-Trailer Truck Driver;

   b.   Whether the Defendants' pay practices, including those of failing to pay overtime,

        violated the H-2A contract and program regulations, and applicable federal and state

        employment laws;

    c.   Whether the Defendants paid the wages promised in the employment contracts, as required by H-2 program regulations, and applicable federal and state laws;

    d.   Whether the Defendants failed to pay all members of the Plaintiff Class their full wages when due in violation of applicable laws;

    e.   Whether the Defendants are liable as joint employers for the actions perpetrated against the Plaintiff Class;

    f.   Whether Defendants caused deductions from the Plaintiffs' and the Class Members' wages by requiring purchases of items for work; and

    g.   What relief is necessary to remedy Defendants' unfair and unlawful conduct as herein alleged.

85.   **Adequacy of Plaintiffs as Class Representatives.**  Plaintiffs can adequately and fairly represent the interests of the Plaintiff Class as defined above because their individual interests are consistent with and not antagonistic to the interests of the class. Further, Plaintiffs have no actual or potential conflict with any member of the class.

86.   **Adequacy of Counsel for the Class.**  Counsel for Plaintiffs possesses the requisite resources and ability to prosecute this case as a class action and are experienced labor and employment attorneys who have successfully litigated other cases involving similar issues.

87.   **Propriety of Class Action Mechanism.**  Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members of the Class. Defendants have implemented a scheme that is generally applicable to the Plaintiff Class, making it appropriate to issue relief, including declaratory relief with respect to the Plaintiff Class.  In particular, the violations of law perpetrated against all Class Members in this case revolve around the application and interpretation of the H-2A contracts, overtime pay, and the interpretation of the wage requirements. Similarly, the

Defendants' liability as joint employers is based on actions taken with regard to the Plaintiff Class as a whole.

88.    The Plaintiff Class has been injured and is entitled to recover from Defendants for wrongful conduct and injuries.  Class treatment will allow those similarly-situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  Further, the prosecution of separate actions against Defendants by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.  For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

**FIRST CLAIM FOR RELIEF – FAIR LABOR STANDARDS ACT**
Violation of the Fair Labor Standards Act ("FLSA")
(29 U.S.C. §§ 201, *et seq.*)

89.    Plaintiffs incorporate paragraphs 8-79, and 80-88 of this Complaint by reference as though fully set forth herein.

90.    Plaintiffs Delgado-Bojorquez, Diaz-Ramirez and Lopez-Valdez assert this claim for the 2022 season pursuant to 29 U.S.C. § 206(a).

91.    Plaintiffs Delgado-Bojorquez, Aviña-Coto, Diaz-Ramirez and Lopez-Valdez assert this claim for the 2023 season.

92.    Plaintiff Diaz-Ramirez asserts this claim for the 2024 season.

93.    This count is brought as a collective action pursuant to 29 U.S.C. § 216(b) against Defendants KB Custom Ag Services, LLC and Kyle Beauchamp.

94.    Defendants required Plaintiffs and others similarly situated to obtain, at their own cost, truck driving licenses for use internationally.

95.    Plaintiffs and others similarly situated, in order to satisfy Defendants' prehire requirements for truck drivers, incurred costs in Mexico to qualify for and obtain the international driver's license which Defendants required.

96.    Plaintiffs and others similarly situated incurred license fees, medical and language exam fees, and training fees associated with obtaining the commercial licenses required by Defendants.

97.    These license costs, including associated exam fees, incurred by Plaintiffs and others similarly situated exceeded $600 dollars and when deducted from Plaintiffs' and others' first workweek's wages reduced their earning below the applicable federal minimum wage.

98.    The license fees and associated exam costs were expenses necessitated by Defendants and were for Defendants' primary benefit.

99.    Plaintiffs and others similarly situated also incurred unreimbursed travel expenses in the 2022 and 2023 seasons prior to their first day of work in the United States.

100.    The travel expenses Plaintiffs and others similarly situated incurred were for Defendants' benefit.

101.    Upon arrival in the United States, Plaintiffs and others similarly situated were also required to obtain a telephone and cellular telephone service in order to operate the applications that Defendants' required and in order to receive messaging from Defendants' supervisors.

102.    The U.S. local telephone and telephone service were for Defendants' benefit and were used by Defendants for time recording although the telephone and telephone service were paid for by Plaintiffs and others similarly situated.

103.    The cost of the telephone and telephone service required for the position with Defendants further reduced Plaintiffs' and others similarly situated workers' first workweek wages.

104.    Because of these unreimbursed expenses, Plaintiffs and others similarly situated did not receive their first workweek's wages free and clear as required by the Fair Labor Standards Act.

105.    The violations of the FLSA resulted from the costs described above which Plaintiffs and

others similarly situated incurred primarily for the benefit or convenience of Defendants prior to or during their first week of work. When these expenses were subtracted from the Plaintiffs' and others similarly situated first workweek pay, as required by law, their earnings fell below the required minimum hourly wage for the workweek.

106.    Defendants also violated the FLSA's Maximum Hours provision by failing to Plaintiffs and others similarly situated time and a half the applicable regular rate of pay for hours worked above forty in a workweek.

107.    Plaintiffs and others similarly situated regularly worked weekly hours well in excess of forty per workweek.

108.    Defendants did not pay Plaintiffs and others similarly situated overtime wages in the amount of one and a half times the legally required regular rate for any of the hours worked above forty in a workweek.

109.    Defendants had knowledge of their FLSA obligations through a prior suit filed in 2020 which asserted similar claims against Defendant KB Custom Ag Services, LLC including violation of its FLSA overtime obligations.

110.    Defendants had knowledge of their FLSA obligations because they were informed of their duty to reimburse expenses incurred by foreign workers through correspondence they received each year from the U.S. Department of Labor's Office of Foreign Labor Certification.

111.    Accordingly, Defendants' violations as set forth in this Count were willful within the meaning of the FLSA. Defendants had knowledge of their FLSA obligations, including the obligation to reimburse costs incurred for their benefit, to pay overtime, and Defendants failed to comply with those obligations.

112.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs and similarly situated opt-in plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations without

earning an average of the applicable minimum wage for all hours worked and without receiving

time and a half the applicable hourly rate for compensable hours over forty worked in a workweek.

113.    Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to 29 U.S.C. §

216(b).

## SECOND CLAIM FOR RELIEF

Breach of Employment Contract

(Common Law - Rule 23 Class Count)

114.    Plaintiffs incorporate paragraphs 8-88 of this Complaint by reference as though fully set

forth herein.

115.    This Count sets forth a claim against both Defendants.

116.    Plaintiffs bring this Second Claim against both Defendants for Defendants' breach of the

H-2A employment contracts.

117.    This count is brought as a Rule 23 class claim for Defendants' failure to pay the legally-

required wage rate for the position in which Plaintiffs and other class members were employed for

all compensable hours worked under the terms of the H-2A order by Plaintiffs, other H-2A truck

drivers employed by Defendants, and those domestic workers in corresponding employment.

118.    At all times relevant to this action, Plaintiffs and other class members, including H-2A

visa-holding truck drivers and domestic truck drivers employed by Defendants, were employed

under the terms and conditions contained in the H-2A job orders described in paragraphs 20 to

36.

119.    These uniform employment contracts promised Plaintiffs and other class members the

legally-required hourly wage rate for the jobs they performed, compliance with employment

related laws including overtime, and receipt of at least the federal or state minimum wage.

120.     Accordingly, the uniform employment contracts required Defendants to follow federal employment laws, including the federal requirement to pay overtime wages when Plaintiffs and other class members worked more than 40 hours in a work week.

121.     The legally required wage applicable for truck driving was in excess of $20 per hour during all applicable time periods as detailed in paragraphs 62 through 76.

122.     Plaintiffs and other class members were employed as truck drivers but were not paid the required wage for the work they performed.

123.     Defendants also contractually promised to pay domestic and foreign worker equally.

124.     Defendants also contractually promised to not reduce Plaintiffs' and other class members' wages by undisclosed expenses.

125.     Plaintiffs and other class members performed on their relevant employment contracts.

126.     Defendants failed to pay Plaintiffs and other class members for all compensable hours worked at the legally required wage rates and failed to pay any overtime wages.

127.     Defendants' breach of the uniform employment contracts occurred in part because Defendants failed to pay the required hourly compensation.

128.     Defendants' breach of the uniform employment contracts also occurred in part because Defendants failed to pay overtime wages owed.

129.     Defendants also breached the uniform employment contracts by requiring Plaintiffs and other class members who were H-2A workers, as a condition of obtaining an H-2A visa to work for Defendants, to obtain Mexican Binational truck driving licenses at Plaintiffs' and other class members' personal expense which reduced Plaintiffs' and other class members' wages below the legally required wage rates.

130.     Defendants also breached the uniform employment contracts by requiring the purchase of cellular telephones and cellular telephone service which reduced Plaintiffs' and proposed class members' wages below the legally required wage rates.

131. As a direct and proximate result of Defendants' actions as described above Plaintiffs and other class members have been deprived of the legally required wages for the work performed and are entitled to recover the amounts due, interest upon those sums, and their attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

Quantum Meruit

(Rule 23 Class Claim)

132. This Count asserts a common law claim for damages, in the alternative, under the doctrine of quantum meruit.

133. Plaintiffs bring this Claim against Defendants for failure to pay compensation in the amount to which Plaintiffs were entitled as a matter of equity.

134. Plaintiffs bring this claim on behalf of themselves and the class, pursuant to Rule 23(b)(3), for all Defendants' failure to pay wages due for the positions in which Plaintiffs and others similarly situated were employed.

135. Defendants directed Plaintiffs and others similarly situated to perform services as heavy, over the road, commercial truck drivers.

136. Plaintiffs and others similarly situated performed valuable services, as commercial truck drivers, for Defendants.

137. Defendants accepted, and directed, the benefit of Plaintiffs' services, and the services of others similarly situated, under circumstances that reasonably notified Defendants that compensation for these services was expected.

138. Defendants knew that Plaintiffs and other similarly situated truck drivers expected compensation for their services.

139.    The Defendants did not pay Plaintiffs or similarly situated class members all their wages owed, including payment at the mean wage rate for truck drivers according to U.S. Government wage surveys and overtime premium pay.

140.    The above actions unjustly enriched Defendants.

141.    Plaintiffs and others similarly situated are entitled to compensation at the lawfully required mean prevailing wage applicable to the work actually performed pursuant to the common law of quantum meruit.

142.    As such, Plaintiffs seek quantum meruit damages to provide them and the class full relief including their unpaid wages, interest thereon, and awards of reasonable costs on behalf of themselves and others employed by Defendants as hourly commercial drivers for the 2022, 2023, and 2024 seasons.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract - Termination

143.    Plaintiffs Delgado-Bojorquez, Lopez-Valdez, Aviña-Coto and Diaz-Ramirez assert this count for Defendants' termination of Plaintiffs without cause in violation of their employment contracts.

144.    During the 2023 season, Defendants terminated Plaintiffs Delgado-Bojorquez and Lopez-Valdez.

145.    During the 2024 season, Defendants terminated Plaintiff Diaz-Ramirez.

146.    The terminations of Plaintiffs were without good cause and denied Plaintiffs employment to which they were contractually entitled.

147.    Defendants actions breached Plaintiffs' contractual employment rights.

148.    Plaintiffs seek lost wages and benefits for Defendants' wrongful conduct including the lost compensation and benefits that Plaintiffs would have earned had they not been terminated.

## DEMAND FOR JURY TRIAL

149.    Plaintiffs demands trial by jury on claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and relief as follows:

a)    That the Court assume supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367;

b)    That the Court certify the class and subclasses defined herein;

c)    For an order appointing Plaintiffs as class representatives, and Plaintiffs' Counsel as class counsel;

d)    Under Count One:

1.    Declare that Defendants have willfully violated the FLSA as specified in Count I above:

2.    Declare this action to be a maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allow employees to opt into this action;

3.    Grant judgment against Defendants, jointly and severally, and in favor of each plaintiff and opt-in plaintiff in the amount of their respective unpaid wages plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b); and

4.    Award Plaintiffs their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

e)    Under Count Two:

1.    Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs and the Class, for breach of contract, such that:

i.    Find Defendants breached the contracts as detailed in Plaintiffs' complaint;

ii.    Find that Defendants failed to pay H-2A worker drivers the legally required wage for truck driving;

iii.    Find that Defendants caused Plaintiffs to incur costs for Defendants' benefit that

reduced Plaintiffs' wages below those they were contractually promised to
receive;

iv.    Find that Defendants failed to pay overtime wages that were contractually owed;

v.    Grant Plaintiffs and the Class the wages they were entitled to under the applicable
provisions of the contracts and governing regulatory provisions for each hour they
worked;

2.    Award Plaintiffs and the Class their costs;

3.    Award Plaintiffs and the Class their fees pursuant to applicable law.

f)    Under Count Three:

1.    Grant judgment against Defendants, jointly and severally, and in favor of
Plaintiffs and the Class, such that:

i.    Plaintiffs and the Class receive the damages as necessary to afford full relief in
quantum meruit;

2.    Award Plaintiffs and the Class their costs pursuant to applicable law.

g)    Under Count Four:

1.    Grant judgment against Defendants jointly and severally, and in favor of Plaintiffs
such that:

i)    Find that Defendants breached Plaintiffs' employment contracts by terminating
Plaintiffs without good cause;

ii)    Award Plaintiffs their lost wages and benefits as shall be proven;

iii)    Award such other relief as the Court deems just; and

iv)    Award Plaintiffs' their reasonable costs; and

v)    Award Plaintiffs' their attorneys' fees due under applicable law.

h)    Awarding Plaintiffs and the Class pre-judgment interest on the unpaid wages and
compensation owed to Plaintiffs and the Class and/or any other applicable provision providing

for interest;

i)   Granting declaratory relief as appropriate;

j)   Casting all costs upon Defendants; and

k)   Awarding any such other and further relief, at law or in equity, as the Court deems just

and proper.


DATED: March 14, 2025                         By:   _____/s/ Dawson Morton_____
                                                    DAWSON MORTON, ATTORNEY
                                                    Ga. Bar No. 525985
                                                    Dawson Morton, LLC
                                                    1808 Sixth Street
                                                    Berkeley, CA 94710
                                                    Ph: 404-590-1295
                                                    dawson@dawsonmorton.com

                                                    James Knoepp
                                                    SC Bar 102757
                                                    Dawson Morton, LLC
                                                    1612 Crestwood Drive
                                                    Columbia, SC 29205
                                                    Ph: 828-379-3169
                                                    jim@dawsonmorton.com


                                                    Attorneys for Plaintiffs