IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00847-CNS-NRN

JAIME ALBERTO DELGADO-BOJORQUEZ,
OSCAR JOVANNY DIAZ-RAMIREZ,
JOSE ANIEL LOPEZ-VALDEZ, and
REY DAVID AVIÑA-COTO, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

v.

KB CUSTOM AG SERVICES, LLC, and
KYLE BEAUCHAMP,

    Defendants.

---

### PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION[1]

---

Plaintiffs are truck drivers brought to the United States by Defendants to work pursuant to the H-2A temporary foreign worker visa program hauling silage (chopped row crops) for Defendants' dairy customers. Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, by failing to pay them and other similarly situated heavy tractor-trailer truck drivers overtime wages when they worked more than 40 hours per workweek. (ECF No. 1 – Compl. ¶¶ 107-08); (ECF No. 24 – Answer ¶ 107). There is no dispute that Defendants considered the Plaintiffs and

---

[1] Plaintiffs hereby certify that pursuant to Local Rule 7.1(a) they conferred with Defendants regarding this motion in October of 2025 and again in January of 2026 and Defendants have stated that they intend to oppose the motion.

all other H-2A truck drivers who hauled silage exempt from overtime pursuant to the FLSA and therefore did not pay them overtime wages. (ECF No. 24 – Answer at p.28 ¶ 17) (asserting Motor Carrier Act exemption as affirmative defense to overtime pay).

Plaintiffs therefore move the Court for an order finding that they are similarly situated to Defendants' other H-2A heavy tractor-trailer truck drivers and authorizing the sending of notice. Plaintiffs seek Court approval for a notice to be issued to similarly situated workers defined as:

> All individuals admitted as H-2A temporary foreign workers who were employed by Defendants as heavy tractor-trailer truck drivers at any time within 3 years of when Notice is sent.

Plaintiffs additionally move the Court to order Defendants to provide Plaintiffs the names, addresses (U.S. and foreign), email addresses, and telephone numbers (U.S., foreign, cell phone, and WhatsApp) of the similarly situated H-2A truck drivers within fourteen (14) days in order to assist with the issuance of Notice.

## STATEMENT OF FACTS

Plaintiffs are individuals from Mexico who were admitted to the United States with H-2A visas and worked as hourly compensated heavy tractor-trailer truck drivers for Defendants. (ECF No. 1 – Compl. ¶¶ 1, 3, 8-12); (Decl. of Plaintiff Jaime Delgado-Bojorquez ¶¶ 1-2, 7-9) (attached as Ex. 5); (Decl. of Plaintiff Oscar Jovanny Díaz-Ramírez ¶¶ 1-2, 7-9) (attached as Ex. 6). Defendants operate a custom harvesting business that provides harvesting and trucking of silage for Defendants' dairy customers. (ECF No. 1 – Compl. ¶¶ 15, 37-38); (ECF No. 24 – Answer ¶¶ 15-16). The

named Plaintiffs—Jaime Alberto Delgado-Bojorquez, Oscar Jovanny Diaz-Ramirez, Jose Aniel Lopez-Valdez, and Rey David Aviña-Coto—and the current FLSA opt-in

Plaintiffs, all worked as truck drivers hauling silage from the harvest site to storage at Defendants' dairy customers' facilities.[2] (ECF No. 1 – Compl. ¶¶ 1, 3, 37-38, 59.) (Ex. 5 – Decl. of Delgado-Bojorquez ¶ 4); (Ex. 6 – Decl. of Díaz-Ramírez ¶ 4); (Decl. of FLSA Opt-in Plaintiff Victor Alexis Tapia-Vera ¶¶ 2, 4-5) (attached as Ex. 7). Plaintiffs worked long hours without the benefit of overtime compensation. (ECF No. 1 – Compl. ¶¶ 107-08); (ECF No. 24 – Answer ¶ 107); (Ex. 5 – Decl. of Delgado-Bojorquez ¶¶ 5-6); (Ex. 6 – Decl. of Díaz-Ramírez ¶¶ 5-6); (Ex. 7 – Decl. of Tapia-Vera ¶ 6). As already stated, there is no dispute that Defendants did not pay overtime to the Plaintiffs and other truck drivers and that Defendants claim the Plaintiffs and other truck drivers are exempt from overtime pay under the FLSA.[3] (ECF No. 24 – Answer at p.28 ¶ 17). While whether Defendants failure to pay overtime to all of the truck drivers violated the

---

[2] Defendants' operation employs agricultural equipment operators who drive harvesters to chop the silage and truck drivers who operate heavy tractor-trailer trucks to haul the silage. This suit concerns the truck drivers, all of whom came from Mexico to work through the federal H-2A visa program. Each year between 2022 and 2025 the Defendants have been granted permission to employ between 285 and 575 individuals with H-2A visas. (See Exhibits 1-4) (ETA-790 Forms submitted to government between 2022 and 2025 seeking certification to employ H-2A workers). Some of those individuals were the agricultural equipment operators. The remainder of the H-2A workers—the Plaintiffs and the similarly situated workers they seek to represent—do not operate harvesters and instead work as over-the-road tractor-trailer truck drivers and were required to have Commercial Driver's Licenses.

[3] In addition to their FLSA claim, Plaintiffs also allege breaches of their employment contracts or, in the alternative, a quantum meruit claim. This motion pertains only to Count I of the Plaintiffs' Complaint alleging violations of the overtime provisions of the FLSA. Plaintiffs will file a separate motion pursuant to Federal Rule of Civil Procedure 23 to certify a class with respect to Counts II and III of their Complaint.

3

FLSA is a merits issue, at this point it is clear that Plaintiffs and others who drove tractor-trailer trucks for Defendants were subject to the same alleged FLSA violation and the violation was a result of Defendants' policy of not paying overtime to its truck drivers.

## ARGUMENT

### I.  PLAINTIFFS MEET THE STANDARD FOR COLLECTIVE ACTION CERTIFICATION UNDER THE FLSA.

The FLSA's collective action mechanism promotes resolution of similar claims in one action, advances the remedial goals of the FLSA, and provides essential protections for workers. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting under parallel ADEA collective action mechanism that the "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity"). "The 'opt-in' provisions of section 16(b) of the Act convey upon a named plaintiff . . . the right to try to seek damages in the amounts allegedly due and not paid . . . on behalf of himself or herself and also on behalf of other employees 'similarly situated.'" *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991).

The benefits of the collective action procedure "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche, Inc.,* 493 U.S. at 170. When a collective action is filed, courts have the managerial responsibility to ensure that joinder of additional plaintiffs is accomplished efficiently. *Id.* at 170-71. In the Tenth Circuit, managing collective actions under the FLSA involves a two-step

4

inquiry to determine whether the case should proceed on a collective basis. *Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1102 (10th Cir. 2001). The first step occurs at this, the "notice stage" of the proceedings, prior to the close of discovery, where the court determines whether conditional certification is proper for purposes of sending notice of the action to potential members. At this stage, "plaintiffs need only present substantial allegations that the 'putative class members were together the victims of a single decision, policy or plan'" that resulted in a violation of their wage and hour rights. *Thiessen*, 267 F.3d at 1102 (citation omitted). "The court may rely on 'allegations of the complaint and any supporting affidavits filed by the plaintiff.'" *Wilfong v. TTEC Servs. Corp.*, No. 1:24-cv-01076-CNS-KAS, 2025 WL 580474, at *2 (D. Colo. Feb. 21, 2025) (citations omitted).

The standard at this stage is lenient and typically results in conditional certification. *Thiessen*, 267 F.3d at 1102; *Wilfong*, 2025 WL 580474, at *2. "Courts in this jurisdiction routinely allow conditional certification in FLSA actions. Conditional certification has been denied only where the complaint was wholly conclusory in nature, the supporting affidavit relied on hearsay from unidentified sources, and the nature of the violation was rendered ambiguous by the particular circumstances of the only named plaintiff." *Abdulina* v. *Eberl's Temporary Servs., Inc.*, No. 14-CV-00314-RM-NYW, 2015 WL 12550929, at *4 (D. Colo. Apr. 27, 2015) (citation omitted). "Trial courts generally avoid considering the merits of the underlying collective action in making certification decisions." *Wilfong*, 2025 WL 580474, at *2. At this stage, a court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or

5

make credibility determinations." *Ward v. Express Messenger Sys., Inc.*, No. 17-CV-02005-NYW, 2018 WL 1604622, at *3 (D. Colo. Apr. 3, 2018) (citation and internal quotation omitted).

After merits discovery, a defendant may file a motion to decertify the collective. At that point, the court applies a stricter standard to assure that plaintiffs are indeed similarly situated. During the second certification stage, the court reviews a number of factors, including any (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Thiessen,* 267 F.3d at 1102-03; *Wilfong*, 2025 WL 580474, at *2.

In this case, Plaintiffs' pleadings and declarations show a common policy or scheme to deny them overtime pay that satisfies the requirements for collective action certification. There are no disparate factual or employment settings regarding the Plaintiffs and other H-2A truck drivers. All of Defendants' truck drivers worked pursuant to Defendants' H-2A visas, shared the same written employment contract and job title, employment terms, and all drove trucks hauling silage. (Exs. 1-4) (ETA-790 job orders for 2022 through 2025). All worked overtime hours on a regular basis. (Exs. 1-4) (ETA-790 job orders admitting typical workweek would be at least 57 hours); (Ex. XX – Decl. of Delgado-Bojorquez ¶¶ 5-6); (Ex. XX – Decl. of Díaz-Ramírez ¶¶ 5-6); (Ex. XX – Decl. of Tapia-Vera ¶ 6). The FLSA requires that hours in excess of 40 in a workweek be compensated "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Here the common policy or scheme was

6

Defendants' admitted refusal to pay overtime compensation to its H-2A truck drivers when they worked more than 40 hours in a workweek. (ECF No. 1 – Compl. ¶¶ 107-08); (ECF No. 24 – Answer ¶ 107, p.28 ¶ 17). Plaintiffs have articulated a common plan or scheme that is sufficient for preliminary certification. *See, e.g., Wilfong*, 2025 WL 580474, at *5 (noting minimal burden met where plaintiff's allegations and declarations showed that "putative class members were together the victims of a single decision, policy, or plan") (quoting *Thiessen*, 267 F.3d at 1102).

> II. **PLAINTIFFS' PROPOSED NOTICE SHOULD BE APPROVED AND OTHER TRUCK DRIVERS GIVEN 90 DAYS TO FILE CONSENTS TO SUE.**

A copy of Plaintiffs' proposed notice is attached as Exhibit 8. Plaintiffs have also included the content of the body of their proposed emails and text messages/WhatsApp messages. Plaintiffs will send the notice in Spanish and will have it translated by a federal court certified interpreter once approved by the Court. Postal mail service to workers in Mexico is often slow and sometimes unreliable. (Declaration of James Knoepp ¶ 3) (attached as Exhibit 9). Moreover, individuals who work on employment visas often migrate frequently and are therefore not always at their primary residence to receive postal mail. (Ex. 9 - Knoepp Decl. ¶ 4.) Over the last several years it has been much more common to communicate with individuals who migrate frequently with H-2A visas via text message and WhatsApp, and occasionally via email. (Ex. 9 - Knoepp Decl. ¶ 5.) Given this, Plaintiffs propose to send the notice via postal mail, email, text message/WhatsApp message, and by posting the notice on a website that would allow

potential opt-in Plaintiffs to electronically sign their forms from the website.[4] These are all methods approved in the FLSA collective action context, particularly with respect to workers who migrate frequently. *See, e.g.*, *Dempsey v. Jason's Premier Pumping Servs., LLC*, No. 15-cv-00703-CMA-NYW, 2015 WL 13121134, at *2 (D. Colo. Nov. 11, 2015) (authorizing notice to be sent via regular mail, email, and text message "[d]ue to the fact that workers in the oil and gas industry travel frequently and are away from their homes for long periods of time"); *see also Beukes v. Boehnke*, No. 24-cv-828 (JWB/DLM), 2024 WL 4380815, at *7 (D. Minn. Oct. 3, 2024) (collecting FLSA cases related to electronic signatures and permitting electronic consent forms to be executed given the realities that H-2A workers may be away from their permanent residences for extended periods of time); *Lopez v. Boykin Farms, Inc.*, No. 5:22-CV-491-BO-RN, 2023 WL 7026921, at *4 (E.D.N.C. Oct. 25, 2023) (authorizing notice via text, WhatsApp, and website posting in case involving H-2A workers).

Plaintiffs propose that individuals be provided 90 days from the date the notice is sent to respond by sending/postmarking (or electronically signing) their opt-in form and ask the Court to approve this time frame. *See Esparsen v. Ridley's Family Markets, Inc.*, No. 18-cv-01556-RM-GPG, 2020 WL 9424291, at *4 (D. Colo. Feb. 21, 2020) (noting that 90 days "reflects a notice period that has generally been permitted in the District of

---

[4] Plaintiffs intend to use a third-party administrator to assist with sending notice. The "website" would simply be a landing page set up by the administrator that would contain the FLSA Notice and opt-in form, as well as a copy of the Complaint. Because the notice is too long to send over text message/WhatsApp message, a link would be provided to the landing page where people could review the documents and electronically complete the opt-in form. The link would also be provided in the email notifications that are sent.

Colorado"). This will allow sufficient time to work through any difficulties with returned mail or electronic messages and the possibility that potential opt-in Plaintiffs are migrating and/or have changed phone numbers and therefore do not receive the notice. Plaintiffs' counsel will file a certificate of completion with the Court when the notices are sent and the 90-day opt-in period has begun. Plaintiffs also request they be permitted to send a reminder notice via email and text message/WhatsApp message 45 days after the original notice is sent to those individuals who have not yet responded to the original notice. *See Robertson v. REP Processing, LLC*, No. 19-cv-02910-PAB-NYW, 2021 WL 4255027, at *4 (D. Colo. Sept. 16, 2021) (permitting reminder notice in case where potential opt-ins work in remote locations and are far away from their homes for weeks at a time).

### III. INFORMATION NEEDED TO FACILITATE NOTICE.

Plaintiffs request that the Court order Defendants to provide Plaintiffs all names, addresses (U.S. and foreign), email addresses, telephone numbers (U.S., foreign, cell phone, and WhatsApp), of similarly situated workers within fourteen (14) days in order to facilitate the issuance of the notice. Such information is routinely ordered produced in FLSA collective actions. *See, e.g., Wilfong*, 2025 WL 580474, at *7 ("Courts in this District routinely order defendants to produce this basic information to facilitate the notice process."); *Esparsen*, 2021 WL 9424291, at *5. Plaintiffs request that Defendants be ordered to provide this information in electronic form, if available.

### IV. THE COURT SHOULD EQUITABLY TOLL THE STATUTE OF LIMITATIONS.

Plaintiffs request that the statute of limitations applicable to the FLSA claims of

members of the opt-in class be tolled retroactive to the January 22, 2026, date on which Plaintiffs filed this motion. The statute of limitations applicable to opt-in Plaintiffs joining FLSA collective actions generally runs until they file opt-in forms with the Court. 29 U.S.C. § 256. Of course, such opt-in Plaintiffs lack notice of their right to participate during the pendency of this motion and run the risk of expiration while it is litigated.

Courts often toll potential collective action members' statute of limitations from the date of the filing of a motion to certify, seeking production of mailing addresses. *Stransky v. HealthOne of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181-1182 (D. Colo. 2012); *In re Bank of America Wage and Hour Emp't Litig.*, No. 10-MDL-2138, 2010 WL 4180530, *5 (D. Kan. Oct. 20, 2010). "Applying equitable tolling to this case . . . counters the advantage defendants would otherwise gain by withholding potential plaintiffs' contact information until the last possible moment. Faultless potential plaintiffs should not be deprived of their legal rights on the basis of a defendant's delay, calculated or otherwise." *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007). The Court should toll the statute of limitations applicable to the FLSA claims of opt-in Plaintiffs.

## CONCLUSION

In accordance with 29 U.S.C. § 216(b), Plaintiffs respectfully request that this Court authorize notice of this FLSA action and an opportunity to opt-in be sent to similarly situated H-2A truck drivers. To effectuate notice, Plaintiffs further request that this Court (1) approve the proposed collective action notice attached as Exhibit 8 and the Plaintiffs' proposed methods of distribution; (2) order Defendants, within fourteen

(14) days of the Court's order, to produce all names, addresses (U.S. and foreign), email addresses, telephone numbers (U.S., foreign, cell phone, and WhatsApp), for all workers employed by Defendants in the specified positions; (3) grant a period of 90 days from the date on which Plaintiffs send the notice for individuals to return their consent forms; and (4) toll the statute of limitations on potential FLSA opt-in claims from the date of filing of this motion and during the pendency of the opt-in period.

Dated: January 23, 2026

Respectfully submitted,

/s/ James M. Knoepp
James M. Knoepp
Dawson Morton, LLC
1612 Crestwood Drive
Columbia, SC 29205
Telephone: 828-379-3169
E-mail: jim@dawsonmorton.com

/s/ Dawson Morton
Dawson Morton
Dawson Morton, LLC
1808 Sixth Street
Berkeley, CA 94710
Telephone: 404-590-1295
E-mail: dawson@dawsonmorton.com

Attorneys for Plaintiffs

11

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this date I emailed the foregoing to the following attorneys for the Defendants who have entered an appearance in this matter:

Rebecca Hause-Schultz
621 Capital Mall, Suite 2400
Sacramento, CA 95814
rhause-schultz@fisherphillips.com

Vance O. Knapp
1125 17th Street, Suite 2400
Denver, CO 80202
vknapp@fisherphillips.com

                                                */s/ James M. Knoepp*
                                                James M. Knoepp

this 23rd day of January, 2026.