IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00847-CNS-NRN

JAIME ALBERTO DELGADO-BOJORQUEZ,
OSCAR JOVANNY DIAZ-RAMIREZ,
JOSE ANIEL LOPEZ-VALDEZ, and
REY DAVID AVIÑA-COTO, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

v.

KB CUSTOM AG SERVICES, LLC, and
KYLE BEAUCHAMP,

    Defendants.

---

PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION[1]

---

[1] Plaintiffs hereby certify that pursuant to Local Rule 7.1(a) they conferred with Defendants regarding this motion in January of 2026 and Defendants have stated that they intend to oppose the motion.

Plaintiffs are truck drivers brought to the United States by Defendants to work pursuant to the H-2A temporary foreign worker visa program hauling silage (chopped row crops) for Defendants' dairy customers. Plaintiffs contend that Defendants breached their and other truck drivers' employment contracts or, in the alternative, are liable to them in quantum meruit. (ECF No. 1 - Compl. ¶¶ 114-142.)[2] Plaintiffs seek the Court's determination that their breach of contract and quantum meruit claims may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3).

## THE PROPOSED CLASS

The proposed class, represented by the named Plaintiffs, is defined as:

> All individuals admitted as H-2A temporary foreign workers who were employed by Defendants as heavy tractor-trailer truck drivers at any time between March 14, 2022 and the present.

Between 2022 and 2025 Defendants recruited and hired hundreds of truck drivers from Mexico each year.

## STATEMENT OF FACTS

Plaintiffs are individuals from Mexico who were admitted to the United States with H-2A visas and worked as hourly compensated heavy tractor-trailer truck drivers for Defendants. (ECF No. 1 – Compl. ¶¶ 1, 3, 8-12); (Decl. of Jaime Delgado-Bojorquez ¶¶ 1-2, 7-9) (attached as Ex. 5); (Decl. of Oscar Jovanny Díaz-Ramírez ¶¶ 1-2, 7-9) (attached as Ex. 6). Defendants operate a custom harvesting business that provides harvesting and trucking of silage for Defendants' dairy customers. (ECF No. 1 – Compl.

---

[2] Plaintiffs also allege the Defendants violated the Fair Labor Standards Act. Plaintiffs have filed a separate motion to certify their FLSA claims as a collective action. (ECF No. 37.)

1

¶¶ 15, 37-38); (ECF No. 24 – Answer ¶¶ 15-16). The named Plaintiffs and the other proposed class members all worked as truck drivers hauling silage from the harvest site to storage at Defendants' dairy customers' facilities.[3] (ECF No. 1 – Compl. ¶¶ 1, 3, 37-38, 59.) (Ex. 5 – Decl. of Delgado-Bojorquez ¶ 4); (Ex. 6 – Decl. of Díaz-Ramírez ¶ 4); (Decl. of Class Member Victor Alexis Tapia-Vera ¶¶ 2, 4-5) (attached as Ex. 7).

Plaintiffs' complaint contends that Defendants annually brought hundreds of truck drivers from Mexico under the H-2A visa program, paid them lower wages than they were legally owed, and denied them overtime pay. The H-2A visa program allows employers to recruit and hire foreign workers on temporary visas if U.S. workers are not available to perform the job and if the wages and working conditions offered will not adversely affect the wages or working conditions of U.S. workers similarly employed. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 20 C.F.R. § 655.100. Employers seeking H-2A visas must submit a proposed temporary labor certification application to the federal government, called an ETA-790 "clearance order." *See* 20 C.F.R. § 655.122 (specifying minimum terms which must be contained in the job offer). The ETA-790 clearance orders, as well as federal regulations, establish the minimum benefits, wages, and working conditions that apply to the employment of foreign workers, and form the

---

[3] Defendants' operation employs agricultural equipment operators who drive harvesters to chop the silage and truck drivers who operate heavy tractor-trailer trucks to haul the silage. This suit concerns the truck drivers, all of whom came from Mexico to work through the federal H-2A visa program. Each year between 2022 and 2025 the Defendants have been granted permission to employ between 285 and 575 individuals with H-2A visas. (*See* Exhibits 1-4) (ETA-790 Forms). Some of those individuals were the agricultural equipment operators. The remainder of the H-2A workers—the Plaintiffs and the other class members—do not operate harvesters and instead work as over-the-road tractor-trailer truck drivers and were required to have Commercial Driver's Licenses.

2

employment contracts at issue in this case. 20 C.F.R. § 655.122(q); *see also Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242, 1248 (10th Cir. 2020) ("'[T]he required terms of the [clearance] order and the certified Application for Temporary Employment Certification' became their work contracts.") (quoting 20 C.F.R. § 655.122(q)).

Each year from 2022 through 2025, Defendants recruited hundreds of H-2A truck drivers from Mexico and employed them pursuant to the same job title and subject to the same terms and conditions of employment set forth in the Defendants' ETA-790 clearance order filings. (Exs. 1-4). Those contracts promised, *inter alia*, the following:

- All workers would be paid the highest wage rate in effect at the time the work is performed for every hour or portion thereof worked during a pay period. 20 C.F.R. §§ 655.120, 655.122(l); and

- The employer would comply with applicable Federal, State, and local laws and regulations. 20 C.F.R. § 655.135(e).

Plaintiffs allege that Defendants breached their employment contracts with respect to all truck drivers either by paying an unlawful wage rate, failing to pay overtime wages, or both.

First, except for 2024, Defendants failed to pay the Plaintiffs and other H-2A truck driver class members the correct hourly wage rate for driving heavy tractor-trailer trucks. Rather, in 2022, 2023, and 2025 Defendants submitted applications to employ "Agricultural Equipment Operators" and paid Plaintiffs and other truck drivers the adverse effect wage rate ("AEWR") for agricultural workers even though Plaintiffs and other class members did not operate agricultural equipment such as harvesters but, rather, drove heavy tractor-trailer trucks over public roads and highways. This resulted

in the Plaintiffs and other H-2A truck drivers being paid wage rates that were several dollars lower *per hour* than what was legally required. For example, in 2023 the Plaintiffs were paid the AEWR wage rate of $14.87/hour for work in Texas. (Ex. 2 at pp. A.1, B.1-B.3 – 2023 ETA-790); (Ex. 5 Attachments – Decl. of Delgado-Bojorquez); (Exs. 10-12) (Plaintiffs' checkstubs). Plaintiffs allege the legally required wage rate for heavy tractor-trailer truck drivers working in Texas in 2023 was $22.22/hour before July 1, 2023, and $24.20/hour after July 1, 2023. (ECF No. 1 – Compl. ¶¶ 68, 71) (setting forth wage rates). This failure to pay the correct hourly wage rate happened each year during 2022, 2023, and 2025 with respect to all of the H-2A truck drivers. (*Compare* AEWR wage rates listed in Exs. 1, 2, 4 *with* Compl. ¶¶ 62-76).[4]

Second, Plaintiffs also allege that each year between 2022 and 2025, including 2024 when Defendants paid the higher tractor-trailer truck driver wage rate, they and other truck drivers' employment contracts were breached when Defendants did not pay them overtime wages. Plaintiffs worked long hours without the benefit of overtime compensation. (ECF No. 1 – Compl. ¶¶ 107-08); (ECF No. 24 – Answer ¶ 107); (Ex. 5 – Decl. of Delgado-Bojorquez ¶¶ 5-6 & Attachments); (Ex. 6 – Decl. of Díaz-Ramírez ¶¶ 5-6); (Ex. 7 – Decl. of Tapia-Vera ¶ 6); (Exs. 10-12) (additional paycheck stubs showing hours over 40 with no overtime pay). Defendants' practice and policy was not to pay

---

[4] By contrast, in 2024 Defendants filed two separate applications for H-2A workers—one for "CDL Truck Drivers" and another for "Agricultural Equipment Operators"—and promised and paid the truck driver class members a higher wage rate applicable to heavy tractor-trailer truck drivers. (Ex. 3 at p. C.4 – 2024 ETA-790) (promising to pay $23.89/hour in Texas, $24.84/hour in Kansas, $26.31/hour in Colorado, and $24.95/hour in Missouri); (Ex. 12) (2024 paycheck stubs showing higher wage rates).

4

overtime wages to truck drivers because they claimed all truck drivers were exempt from overtime. (ECF No. 24 – Answer at p.28 ¶ 17). Plaintiffs allege that they and other truck drivers were owed overtime wages and Defendants' practice and policy of not paying overtime violated Plaintiffs' and other truck drivers' contractual rights. (ECF No. 1 - Compl. ¶¶ 119-20, 126, 128.)

## ARGUMENT

Plaintiffs seek Rule 23 class certification for their breach of contract and quantum meruit claims. (ECF No. 1 - Compl. ¶¶ 114-142) (Counts II and III). "To certify a class action, plaintiffs must first satisfy Federal Rule of Civil Procedure 23(a)'s requirements: numerosity, commonality, typicality, and adequacy." *White v. General Motors LLC*, No. 1:21-cv-00410-CNS-MEH, 2023 WL 3278460, at *2 (D. Colo. May 5, 2023). The proposed class must also fit one of the three categories enumerated in Rule 23(b). Plaintiffs meet the requirements of Rule 23(b)(3) and propose certification pursuant to that provision.

Class actions exist "to conserve the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion . . . ." *Gen. Tel. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). While "[t]he district court must undertake a 'rigorous analysis' to satisfy itself that a putative class meets the applicable Rule 23 requirement," *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 913 (10th Cir. 2018) (citation omitted), Plaintiffs are not required to show that questions common to the class "will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). At this

5

motion stage, "Rule 23 grants . . . no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "The district court 'must generally accept the substantive, non-conclusory allegations of the complaint as true.'" *Black v. Occidental. Petro. Corp.*, 69 F.4th 1161, 1174 (10th Cir. 2023) (citation omitted).

In this case, the proposed class of over 300 truck drivers from Mexico meets the prerequisites of numerosity, commonality, typicality, and adequacy. Furthermore, as the truck drivers were paid alike and performed the same job subject to the same written contract terms, common questions of law and fact predominate, and a class action would be far superior to any other method of adjudicating the legal claims of more than 300 H-2A truck drivers employed pursuant to identical contracts.

### I. PLAINTIFFS SATISFY ALL PREREQUISITES FOR A CLASS ACTION.

#### A. A Readily Identifiable and Ascertainable Truck Driver Class Exists.

As this Court has stated, "[a]lthough not specified in Rule 23, a prerequisite to a class's certification is its ascertainability." *White*, 2023 WL 3278460, at *5. The proposed class here consists of individuals employed as tractor-trailer truck drivers pursuant to H-2A visas obtained by the Defendants between 2022 and the present—an objectively defined and easily ascertainable group of workers. Defendants have already identified the individuals who were employed as H-2A truck drivers during the relevant time period. (Declaration of James Knoepp ¶ 8) (attached as Ex. 8). Defendants were also required to keep such information pursuant to H-2A program regulations. *See* 20 C.F.R. § 655.122(j) (requiring employers to keep records of "the nature and amount of work performed").

6

### B. The Class is so Numerous that Joinder is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is a "'fact-specific inquiry,' calling for the consideration of certain factors, including 'the nature of the action, the size of individual claims, and the location of the members of the class . . . .'" *White*, 2023 WL 3278460, at *8 (citation omitted). The proposed class in this case is more than 300 individual H-2A temporary foreign workers who, by definition, maintain their permanent residences in Mexico and only worked for Defendants on a seasonal basis between 2022 and the present. (Ex. 9 – Knoepp Decl. ¶ 8) (noting that Defendants' updated response to Plaintiffs' interrogatory regarding the "estimated H-2A driver headcount" employed *each year* ranged between 195 and 330). Courts analyzing cases with similar claims and similar groups of foreign workers with temporary employment visas have found numerosity requirements were easily met. *See, e.g., Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (joinder of H-2A workers from various parts of Mexico "highly impracticable"). In addition, unfamiliarity with the U.S. legal system and lack of fluency in English also favor a numerosity finding. *See Menocal v. GEO Group, Inc.*, 320 F.R.D. 258, 263 n.1 (D. Colo. 2017) ("[J]oinder would be impracticable due to the unique characteristics of the class members, namely that many are spread around the world and are not fluent in English or the U.S. legal system."), *aff'd*, 882 F.3d 905 (10th Cir. 2018). Plaintiffs here satisfy the numerosity requirement of Rule 23(a)(1).

### C. Defendants Treated the Truck Drivers Similarly and There Are Questions of Law and Fact Common to the Class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that class claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted). "A finding of commonality requires only a single question of law or fact common to the entire class." *Menocal*, 882 F.3d at 914. Typically, "[i]n wage cases like this, 'the commonality analysis considers whether the challenged policy is common to the class as a whole, and whether the proposed class members share similar job duties." *Gamboa v. KISS Nutraceuticals*, 777 F. Supp. 3d 1210, 1226 (D. Colo. 2025) (citations and internal quotation omitted).

In this case, both proposed class claims—breach of the employment contracts and quantum meruit—stem from Defendants' wage payment policies and practices described above that applied to all H-2A truck drivers who make up the proposed class. The common questions include:

(a) Whether in 2022, 2023, and 2025 the Defendants paid the Plaintiffs and other class members an illegally low agricultural adverse effect wage rate rather than the higher wage rate that applies to heavy and tractor-trailer truck drivers;

(b) Whether in each year between 2022 and 2025 the Defendants were legally obligated to pay the Plaintiffs and other class members overtime wages when they worked more than forty (40) hours in a workweek and whether this contractual obligation was breached; and

(c) Whether Defendant Kyle Beauchamp is individually liable along with Defendant KB Custom Ag Services, LLC.

8

These common questions are appropriate for class action treatment because they share a common resolution and will be resolved by common proof. For example, whether Defendants' breached workers' contracts by having a policy of paying the Plaintiffs and other H-2A truck drivers the AEWR wage rate applicable to agricultural equipment operators rather than the much higher wage rate that applied to heavy tractor-trailer truck drivers turns on the nature of Defendants' business and the type of work performed, and not on individual information for any specific class member. The class, by definition, only includes individuals who performed the same truck driving work. By improperly classifying the truck driving work as "agricultural equipment operator," Defendants paid the Plaintiffs and other class members illegally low wage rates. *See Mencia v. Allred*, 808 F.3d 463, 471-73 (10th Cir. 2015) (holding that H-2A worker whose work was misclassified by his employer entitled to recovery pursuant to contract and quantum meruit "because the intended contractual wage was illegal" due to the misclassification). Whether Plaintiffs or Defendants are correct regarding the applicable wage rate will be determined later, but for now all that is important is the resolution of the issue will not depend on individual inquiries regarding the truck drivers.

Similarly, whether Defendants breached the contractual promises to comply with Federal law by not paying overtime wages turns on whether overtime wages were owed for the work performed in Defendants' business operations, not on facts or job duties of any individual truck driver. Defendants' practice and policy was not to pay overtime wages to Plaintiffs or any other H-2A truck drivers because Defendants contend the work of *all* of the truck drivers was exempt from overtime. (ECF No. 24 – Answer at p.28

9

¶ 17). Just like Defendants did not make an individual determination of the applicability of the exemption to specific truck drivers, a determination of whether the exemption applies will not turn on facts specific to a particular truck driver. *See, e.g.*, *Pruess v. Presbyterian Health Plan, Inc.*, 745 F. Supp. 3d 1218, 1236 (D.N.M. 2024) (collecting cases and finding commonality where employees uniformly not paid overtime due to claimed exemption). The contractual promise to pay overtime either applies or does not with respect to *all* class members.

Given that there are multiple questions of law that are common to the entire proposed class and that the injuries arise from Defendants' uniform policies and practices, the commonality requirement of Rule 23(a)(2) is satisfied.

### D. The Claims of the Representative Parties Are Typical of the Class's Claims.

Rule 23(a)(3) requires that the class representatives' claims be typical of those of the class as a whole. Fed. R. Civ. P. 23(a)(3). "'Typicality does not require that every member of the class share a fact situation identical to that of the named Plaintiff.'" *McCormick v. HRM Resources, LLC*, No. 1:24-cv-00823-CNS-CYC, 2025 WL 2958834, at *4 (D. Colo. Oct. 17, 2025) (citation omitted). That is particularly so where, as here, "'the claims of the class representative and class members are based on the same legal or remedial theory.'" *Id.* (citation omitted).

The named Plaintiffs' claims in this case are typical of the claims of the proposed class. The named Plaintiffs were employed in the same truck driving positions, pursuant to the same contracts as the other H-2A truck drivers, they shared the same job title, received the same wages, and their claims arise from Defendants' uniform policies and

10

practices applicable to the proposed class of truck drivers. The named Plaintiffs seek to enforce the same contract terms shared by all truck drivers or, in the alternative, to be granted relief pursuant to the doctrine of quantum meruit. As such, the class representatives' claims are typical of those of the entire class.

### E. The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Class's Interests.

Rule 23(a)(4) requires that class representatives and their counsel in a proposed class action "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "'Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class.'" *White*, 2023 WL 3278460, at *12 (citation omitted).

With respect to the named Plaintiffs, they have no conflicts with the other class members, and their interests are the same. The named Plaintiffs will not benefit in any way that will prove harmful to the interests of other class members. All class members will benefit from the relief sought by receiving damages for breach of contract or in quantum meruit. Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. Plaintiffs initiated this suit on behalf of themselves and others, have provided information to their counsel, and are filing declarations as part of this motion describing their work and the underpayment they and other truck drivers suffered. Plaintiffs' counsel are experienced labor and employment lawyers who each have more than two decades of experience representing migrant workers employed pursuant to temporary H-2 visas. (Ex. 8 - Knoepp Decl. ¶¶ 2-6); (Declaration of Dawson Morton ¶¶

11

2-5) (attached as Ex. 9). Plaintiffs' counsel have also been appointed class counsel in a number of other matters. (Ex. 8 - Knoepp Decl. ¶ 5); (Ex. 9 – Morton Decl. ¶ 4).

Rule 23(g) requires a court to appoint class counsel when certifying a class. Fed. R. Civ. P. 23(g). The court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.* First, Plaintiffs' counsel prepared the Complaint and filed this action in March of 2025 and have engaged in Phase I class discovery since that time related to class certification issues. (Ex. 8 - Knoepp Decl. ¶¶ 8-9). Counsel served requests for production and interrogatories, attended a mediation, and worked with the named Plaintiffs on fact development and issues related to class certification. (Ex. 8 - Knoepp Decl. ¶¶ 8-9). Second, and as already noted, Plaintiffs' counsel have extensive experience representing foreign workers in federal class action litigation, including in cases like this one on behalf of workers employed subject to temporary visas. (Ex. 8 - Knoepp Decl. ¶¶ 2-6); (Ex. 9 – Morton Decl. ¶¶ 2-5). Third, counsel are very knowledgeable of the law as it applies to H-2A workers, including the claims in this case related to paying an illegal wage rate and the failure to pay overtime wages. (Ex. 8 - Knoepp Decl. ¶ 6); (Ex. 9 – Morton Decl. ¶ 5). Finally, counsel have sufficient funds to advance all appropriate costs of this litigation and will vigorously and competently prosecute this action on behalf of the class. (Ex. 8 - Knoepp Decl. ¶ 7); (Ex. 9 – Morton Decl. ¶ 7). Plaintiffs satisfy the adequacy requirement of Rule 23(a).

### II. Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

Plaintiffs must also show their proposed class meets the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

#### A. Common Questions of Law and Fact Predominate.

The predominance requirement of Rule 23(b) is similar to, but more demanding than, Rule 23(a)'s commonality requirement. *See Gamboa*, 777 F. Supp. 3d at 1232. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).

Common questions of law and fact do predominate for both the breach of contract and quantum meruit claims because the dominant issue for all class members is the legality of Defendants' pay practices, which Defendants applied uniformly to all truck drivers. As already discussed, Defendants had a common policy and practice of: (1) misclassifying all of the truck drivers in 2022, 2023, and 2025 as "agricultural equipment operators" and paying all of them an illegally low wage rate rather than the wage rate for heavy and tractor-trailer truck drivers; and (2) not paying overtime to any truck drivers in all years at issue based on a contention by Defendants that the truck drivers were exempt. Whether these policies breached Plaintiffs' and the proposed class members' employment contracts or entitles the Plaintiffs and other truck drivers to recover under quantum meruit,

13

turns on legal issues the resolution of which will apply to all of the truck drivers.

The only individual issue with respect to Plaintiffs' and the proposed class members' claims is the amount of damages that would be owed if Plaintiffs prevail because each class member worked a slightly varying number of hours each week. (*See, e.g.,* Ex. 5 Attachments & Exs. 10-12) (sample checkstubs). But even that issue is easily resolved on a class-wide basis since it is a matter of simple math to compute what is owed to class members if they were paid an illegally low wage rate for a certain number of hours, or what is owed for a failure to pay overtime wages for that same number of hours. Individual determinations of damages do not defeat class certification where common legal and factual issues related to liability clearly predominate, as they do here. *See White*, 2023 WL 3278460, at *16 (collecting cases and noting "the possible need to determine damages on an individual basis . . . does not defeat predominance").

### B. A Class Action Is Superior to Other Methods of Adjudication.

The superiority requirement of Rule 23(b)(3) is analyzed through four factors: (1) the interest of class members in individually controlling the prosecution of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced, (3) the desirability of having the litigation of the claims in the particular forum where it has been filed, and (4) the difficulties likely to be encountered in management of the class action. FED. R. CIV. P. 23(b)(3)(A)-(D). Here, a class action is superior to any other method of adjudicating this dispute.

First, it is extremely unlikely that individual class members have any interest in instituting or controlling their own individual actions. Class members maintain their

14

permanent homes in Mexico, are Spanish speakers, and likely lack familiarity with the U.S. legal system. Class members are likely unaware of their rights to prosecute these claims and are likely unable to bring their own individual actions. *See Menocal*, 882 F.3d at 915 ("Considerations such as class members' limited understanding of the law, limited English skills, or geographic dispersal therefore weigh in favor of class certification."). Second, no other litigation concerning this controversy has been commenced against the Defendants by any member of the proposed class. Third, it is desirable to conduct the litigation in this forum. Defendants are incorporated in Colorado and maintain their offices and conduct significant business in this district. Fourth, the benefits of maintaining this action on a class basis far outweigh any administrative burden. Class litigation is no less manageable in this case than in other cases in which claims of temporary foreign visa workers have been certified under Rule 23. *See, e.g.*, *Moodie v. Kiawah Island Inn Co.*, 309 F.R.D. 370, 380 (D.S.C. 2015) ("It is more efficient to resolve both sets of claims [state and FLSA] in a single forum and single litigation than to have parallel proceedings."). Because the claims of the Plaintiffs and proposed class members are based on a common set of facts, testimony will not be needed from all truck drivers. Requiring separate prosecutions would likely result in far greater manageability issues, including duplicative discovery procedures, repeated adjudication of similar controversies, and excessive costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be granted.

Dated:    January 23, 2026    Respectfully submitted,

/s/ James M. Knoepp
James M. Knoepp
Dawson Morton, LLC
1612 Crestwood Drive
Columbia, SC 29205
Telephone: 828-379-3169
E-mail: jim@dawsonmorton.com

/s/ Dawson Morton
Dawson Morton
Dawson Morton, LLC
1808 Sixth Street
Berkeley, CA 94710
Telephone: 404-590-1295
E-mail: dawson@dawsonmorton.com

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this date I emailed the foregoing to the following attorneys for the Defendants who have entered an appearance in this matter:

Rebecca Hause-Schultz
621 Capital Mall, Suite 2400
Sacramento, CA 95814
rhause-schultz@fisherphillips.com

Vance O. Knapp
1125 17th Street, Suite 2400
Denver, CO 80202
vknapp@fisherphillips.com

             */s/ James M. Knoepp*
             James M. Knoepp

this 23rd day of January, 2026.