IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:25-cv-847-CNS-NRN

JAIME ALBERTO DELGADO-BOJORQUEZ,
OSCAR JOVANNY DIAZ-RAMIREZ,
JOSE ANIEL LOPEZ-VALDEZ, and
REY DAVID AVIÑA-COTO, on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

KB CUSTOM AG SERVICES, LLC, and
KYLE BEAUCHAMP,

Defendants.

_____

**DEFENDANTS KB CUSTOM AG SERVICES, LLC AND KYLE BEAUCHAMP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION**

_____

Defendants KB Custom AG Services, LLC ("KB"), and Kyle Beauchamp (collectively, "Defendants"), by their undersigned counsel, hereby submit their Response in Opposition to Plaintiffs' Motion for Conditional Certification of Fair Labor Standards Act Collective Action (Doc. No. 37) ("Motion").

**PRELIMINARY STATEMENT**

Plaintiffs assert a single cause of action for failure to pay overtime under the Fair Labor Standards Act ("FLSA"), alleging that Defendants violated the FLSA by failing to pay them and other "heavy tractor-trailer truck drivers" overtime wages when they worked

more than 40 hours in any given workweek. (Compl. [Doc. No. 1] ¶¶ 107-08). They seek to conditionally certify a collective action of "individuals admitted as H-2A temporary foreign workers who were employed by Defendants" pursuant to 29 U.S.C. § 216(b) and are requesting permission to send court-approved notices to all potential collective-action members inviting them to join, or "opt-in," to the collective action. [Doc. No. 37 at p. 2].

Plaintiffs have not met their burden on conditional certification. Plaintiffs offer two sources of evidence for the Motion: three declarations submitted by Plaintiff Jaime Alberto Delgado-Bojorquez, Plaintiff Oscar Jovanny Diaz-Ramirez, and Opt-In Plaintiff Victor Alexis Tapia-Vera; and a single affirmative defense asserted by Defendants in their Answer to Plaintiffs' Complaint, which is neither evidence nor an admission. As such, Plaintiffs do not sustain their burden of presenting "substantial allegations that the putative class members 'were together the victims of a single decision, policy or plan' that resulted in a violation of their wage-and-hour rights." *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Even if the Court is inclined to grant the Motion, conditional certification should be limited to employees who worked in the same states as the declarants because Plaintiffs have not met their burden of demonstrating that conditional certification of a *nationwide* class is appropriate. The Declarants' knowledge is limited to their personal observations and experiences working for Defendants in four specific states: Texas, Colorado, Oklahoma, and Kansas. Plaintiffs make no factual allegations, beyond conclusory assertions, that would permit the Court to conclude that the Declarants have personal knowledge of the experiences of KB employees working in any other state. For these reasons, and for those articulated below, the Motion should be denied.

## RELEVANT FACTUAL BACKGROUND

KB is a limited liability company that offers agricultural clients, including dairies, custom forage harvesting services. (*See* **Exhibit A**, Declaration of Catie Beauchamp ("Beauchamp Decl.") ¶ 4).[1] KB employs temporary foreign workers through the federal H-2A visa program to perform this work.[2] (*Id.* at **Exhibits 1-4**; *see also* **Exhibit B**, Declaration of Monica Simmons (Simmons Decl."), at **Exhibit 1**). Some of the H-2A workers employed by KB are required to haul forage using heavy trucks to points of first processing (typically dairies). (*See* Beauchamp Decl., **Ex. A**, ¶¶ 6-7).

The Company's operations hub is located in Hartley, Texas, which is in the panhandle of the state, close to the borders of Oklahoma, Kansas and Colorado. (*Id.* at ¶ 9). Because of the locations of KB's operation hub and points of delivery, KB's drivers frequently cross state lines when transporting and delivering harvested commodities. (*Id.*). Their routes and assignments vary on a daily basis. (*Id.*)

---

[1] Forage harvesting is the mechanical process of cutting, chopping, and collecting crops like corn, sorghum, or grass to produce high-quality fermented livestock feed known as silage. (Beauchamp Decl., Ex. A, at ¶ 5). The harvesting process is as follows: (1) the forage is severed at the base of the stalk, and a merger or triple mower consolidates it into a windrow; (2) a harvesting machine traverses the windrow and chops the forage into uniform pieces; (3) the harvesting machine then propels the chopped feedstuff by blower into a trailer towed by a tractor or semi-truck; and (4) the forage is transported to the point of initial silage processing, typically at a dairy farm. (*Id.*).

[2] The H-2A visa program allows employers to hire foreign agricultural workers to perform temporary or seasonal labor in the United States. *See* 8 U.S.C. § 1188. Employers file a temporary labor certification with the U.S. Department of Labor ("DOL") including a job offer, known as a "job order." ( Id. ¶ 20.) The "job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States." (Id. (citing 20 C.F.R. § 655.12(a)(2)). H-2A employers must pay their employees the highest of (1) the Adverse Effect Wage Rate ("AEWR"), (2) the prevailing hourly wage or piece rate for the geographical region and type of work, (3) a collectively bargained wage, or (4) the Federal or State minimum wage. 20 C.F.R. §§ 655.120(a), 655.122(a).

Plaintiffs are Mexican nationals and former employees of KB who were hired under the federal H-2A visa program. (*Id.* ¶ 10). Plaintiffs and the proposed class were hired under four separate Job Orders, which will be referred to herein as the 2022 Job Order, the 2023 Job Order, the 2024 Heavy Haul Job Order, and the 2025 Job Order, respectively. (Beauchamp Decl., **Ex. A**, ¶ 8 and Exs. 1-4). By the very terms of these Job Orders, Plaintiffs and the proposed class were promised different hourly rates in exchange for their services. (*Id.* ¶¶ 13-15 & Ex. 1-4). This is in part because, in 2023, the DOL overhauled its methodology for calculating Adverse Effect Wage Rates ("AEWR") – the hourly rates below which KB could not pay its H-2A workers or their domestic counterparts *See* 88 Fed. Reg. 12760 (the "2023 Final Rule").[3] The 2022 and 2023 Job Orders used wage rates based on pre-2023 Final Rule methodology, while the 2024 Heavy Haul Job Order adopted wage rates in line with the new methodology established by the 2023 Final Rule. (*Id.* at Exs. 1-3).

---

[3] The 2023 Final Rule establishing a new methodology for determining hourly AEWRs for non-range occupations (*i.e.*, all occupations other than herding and production of livestock on the range) for temporary labor certifications in the H-2A program. (*Adverse Effect Wage Rate Methodology for the Temporary Employment of H–2A Nonimmigrants in Non-Range Occupations in the United States, Final Rule,* 88 Fed. Reg. 12760 (Feb. 28, 2023)). Under this methodology, AEWR are determined based upon the Standard Occupation Code (SOC) assigned to a worker. *Id.* at 12766. This resulted in the imposition of higher AEWRs for job opportunities involving driving duties. *Id.* at 12780. The 2023 Final Rule was rescinded in its entirety in August 2025. *(See Teche Vermillion Sugar Cane Growers v. Lori Chavez-DeRemer*, No. 6:23-Civ-831, 2025 BL 304733 (W.D. La. Aug. 25, 2025) (the "*Vermillion* Judgment") (a copy of which is attached hereto as **Exhibit C**). In October 2025, the DOL released an interim final rule (IFR) with yet another methodology for calculating hourly AEWRs for non-range occupations, including those that require workers to drive heavy trucks. *See Adverse Effect Wage Rate Methodology for Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 90 Fed. Reg. 47914 (Oct. 2, 2025) (the "2025 Interim Final Rule").

Plaintiffs seek to conditionally certify a collective of "truck drivers" employed by Defendants under the aforementioned Job Orders for purported FLSA overtime violations. In support of the Motion, Plaintiffs have submitted three substantially similar declarations, as well as copies of the aforementioned Job Orders. The declarants – Plaintiff Delgado-Bojorquez, Plaintiff Diaz-Ramirez, and Plaintiff Tapia-Vera – attempt to paint themselves as non-exempt from the FLSA's overtime provisions by declaring that they: worked as "cargo truck driver(s)" for Defendant; worked more than forty hours a week; were not paid overtime; and that at no time during their employment with Defendants did they operate a "harvesting machine" or "harvest agricultural products." (Doc. No. 37-5 (Delgado-Bojorquez) ¶¶ 2, 5, 8; Doc. No. 37-6 (Diaz-Ramirez) ¶¶ 2, 5, 8; Doc. No. 37-7 (Tapia-Vera) ¶¶ 2, 6, 9). The declarants also offer hearsay testimony that other unnamed drivers also worked more than 40 hours a week and "did not receive overtime pay." (Doc. No. 37-5 (Delgado-Bojorquez) ¶ 6; Doc. No. 37-6 (Diaz-Ramirez) ¶ 6; Doc. No. 37-7 (Tapia-Vera) ¶ 7). Plaintiffs and Opt-In Plaintiff Tapia-Vera worked only in the states of Texas, Kansas, Colorado, Oklahoma, and New Mexico during their employment with KB. (Beauchamp Decl., Ex. A, at ¶¶ 17-18).

**ARGUMENT**

I. **Legal Standard for Conditional Certification.**

Section 216(b) of the FLSA permits workers to sue an employer for allegedly unpaid wages on behalf of themselves and "other employees similarly situated," who file written consent to join. 29 U.S.C. § 216(b). In the Tenth Circuit, a two-step process—also called the *ad hoc* approach—is used to determine "whether to certify a putative collective

5

of 'similarly situated' employees." *Dagley v. Am. Med. Response, Inc.*, No. 23-CV-01681-NYW-MEH, 2024 WL 5326397, at *3 (D. Colo. Nov. 13, 2024) (citing *Thiessen*, 267 F.3d at 1105). During this first step, also known as the notice stage, courts consider whether a plaintiff has asserted "substantial allegations" that the putative collective members were subject to "a single decision, policy, or plan." *Id.* Plaintiffs bear the burden of showing that there are other aggrieved employees who were similarly subject to the same allegedly unlawful policy or plan. *Nelson v. FedEx Ground Package Sys., Inc.*, No. 18-CV-01378-RM-NYW, 2018 WL 6715897, at *4 (D. Colo. Dec. 21, 2018), *report and recommendation adopted*, No. 1:18-CV-01378-RM-NYW, 2019 WL 1437765 (D. Colo. Feb. 8, 2019).

Plaintiffs' "burden to show they are similarly situated 'cannot be satisfied simply by unsupported assertions.'" *Dagley*, 2024 WL 5326397, at *3. To obtain conditional certification, Plaintiffs must put forth "substantial allegations" that they and those they seek to include in the collective were similarly situated and together the victims of a single FLSA-violating decision, policy, or plan. *Thiessen*, 267 F.3d at 1105; *see also Saarela v. Union Colony Protective Servs., Inc.*, No. 13–CV–01637–MSK–MJW, 2014 WL 3408771, at *2-3 (D. Colo. July 14, 2014). A plaintiff succeeds in setting forth "substantial allegations" demonstrating that they and the members of the putative collective are similarly situated when the complaint contains non-conclusory allegations that are supported by sufficient evidence so as to make them "substantial." *Nelson*, 2018 WL 6715897, at *4 (denying conditional certification where, *inter alia*, complaint was wholly conclusory in nature and the supporting affidavit relied on hearsay from unidentified sources). Importantly, "[t]he notice and opt-in process outlined by the FLSA is not a

discovery device to determine whether conditional certification is appropriate. More is required under the law, even at the first stage of the conditional certification process." *Stallings v. Antero Res. Corp.*, No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610, at *6 (D. Colo. Mar. 12, 2018), *report and recommendation adopted*, No. 17-CV-01939-RM-NYW, 2018 WL 2561046 (D. Colo. Apr. 16, 2018).

Because Plaintiffs have not pled substantial allegations to show that they are similarly situated to the proposed putative collective, the Court should deny conditional certification.

### A. Plaintiffs' Conclusory Allegations Are Insufficient to Meet Their Burden.

During the notice stage, "mere conclusory declarations or those based on hearsay or speculation are insufficient to grant conditional FLSA collective action certification." *Quint v. Vail Resorts, Inc.*, No. 20-CV-03569-DDD-GPG, 2022 WL 2753637, at *5 (D. Colo. Feb. 21, 2022) (internal citations omitted), *report and recommendation adopted*, No. 120CV03569DDDGPG, 2022 WL 2756948 (D. Colo. June 23, 2022); *MacDonald v. Covenant Testing Techs., LLC*, No. 18-CV-02290-NRN, 2019 WL 1755282, at *3 (D. Colo. Apr. 18, 2019) ("[T]he court may deny conditional certification where … the supporting affidavit relies on hearsay from unidentified sources"); *Peterson v. Nelnet Diversified Solutions, LLC*, No. 17-cv-01064-NYW, 2018 WL 3470604, at *4 (D. Colo. Apr. 25, 2011) (same). Plaintiffs' declarations supporting certification are rife with conclusory allegations and hearsay. For example:

- Plaintiffs Delgado-Bojorquez and Diaz-Ramirez state that: "**_We_** were not paid overtime at any time. **_We_** only receive normal pay for each hour worked, no matter if **_we_** work a lot of hours in a week—the hourly pay remained the same." However, Plaintiffs do not identify any such worker apart from themselves who was not paid

7

- overtime. (Doc. No. 37-5 (Delgado-Bojorquez) ¶ 5; Doc. No. 37-6 (Diaz-Ramirez) ¶ 5).

- Plaintiffs Delgado-Bojorquez, Diaz-Ramirez, and Tapia-Vera also claim that the "normal schedule" consisted of working long hours, usually "seven days a week." However, neither Diaz-Ramirez nor Tapia-Vera provide any information to support this claim, and while Delgado-Bojorquez provided payroll checkstubs, the checkstubs fail to support his claim that he normally worked seven days a week.[4] Plaintiffs likewise fail to put forth evidence that any worker other than themselves usually worked seven days a week, or even just worked long hours. (Doc. No. 37-5 (Delgado-Bojorquez) ¶ 5; Doc. No. 37-6 (Diaz-Ramirez) ¶ 5; Doc. No. 37-7 (Tapia-Vera) ¶ 6).

- Plaintiffs Delgado-Bojorquez, Diaz-Ramirez, and Tapia-Vera additionally claim to "know" that "other drivers also did not receive overtime pay for hours above forty in a week because [they] talked about the payments among" themselves. However, Plaintiffs fail once again to identify any worker—apart from themselves—who did not receive overtime pay. (Doc. No. 37-5 (Delgado-Bojorquez) ¶ 6; Doc. No. 37-6 (Diaz-Ramirez) ¶ 6; Doc. No. 37-7 (Tapia-Vera) ¶ 7).

These types of "conclusory assertions based on speculation" are insufficient to certify a collective, and the Court should decline to do so at this junction. *See McDonald*, 2019 WL 1755282, at *5-6 (finding Plaintiff's allegations not substantial enough to warrant conditional certification with respect to Defendant's purported "Travel-Time Pay Policy" where Plaintiff could only identify by name one other employee allegedly subject to the same policy); *Richardson v. NV5, Inc.*, No. 1:22-CV-02454-RM-SKC, 2023 WL 6127914, at *2-3 (D. Colo. Sept. 19, 2023) (finding allegations of similarity insufficient where the allegations appeared "to be extrapolated solely from Plaintiff's own experiences" and Plaintiff's supporting affidavit showed that his contentions regarding other employees were "based on mere assumptions"); *Quint*, 2022 WL 2753637, at *5 ("While Plaintiffs'

---

[4] In fact, Delgado-Bojorquez worked seven days a week less than half of the 28 workweeks reflected in the payroll check stubs.

burden is modest, it is not non-existent, and it cannot be satisfied simply by unsupported assertions.").

### B. Plaintiffs Have Not Demonstrated that They Are "Similarly Situated" to the Putative Collective Action Members Because They Were Properly Classified, Overtime-Exempt Employees.

Plaintiffs have not demonstrated that they are similarly situated to all of the employees they seek to represent because they meet the requirements of the FLSA's Agricultural and Motor Carrier Act exemptions. Under the FLSA, properly classified agricultural employees are exempt from the FLSA's requirement to pay overtime. *Id.* § 213. "Agriculture" "includes farming in both a primary and a secondary sense." *Bayside Enters., Inc. v. N.L.R.B.*, 429 U.S. 298, 300 (1977); *see also Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1185 (10th Cir. 2004) (defining secondary agriculture as those "performed by a farmer or on a farm as an incident to or in conjunction with such farming operations"). Independent contractors and their employees who perform primary agricultural tasks on the farms of client farmers unequivocally fall within the scope of the exemption. *See Wirtz v. Osceola Farms Co.,* 372 F.2d 584 (5th Cir. 1967) (drivers who transported farm laborers to and from client's farms and who transported meals from off-farm locations to the laborers to eat in the fields were exempt because their work was incidental to the primary agricultural task of harvesting performed by the laborers); *Porter v. T.J. Crowder and Sons, LLC*, 2024 WL 2111571, at *4 (D. Colo. May 10, 2024) (concluding that defendant's work of removing manure from a client's feedlot fell constituted both primary and secondary agriculture within the meaning of the exemption). In transporting forage to clients' farms for silage processing, Plaintiffs performed work that

was "incident to or in conjunction with" farming operations, and, therefore, fall within the FLSA's Agricultural Exemption.

Plaintiffs are also not similarly situated to all the workers they seek to represent because their work clearly falls within the scope of the FLSA's Motor Carrier Exemption. The exception applies both where a driver actually transports goods in interstate commerce and where a driver has never transported goods in interstate commerce but has a reasonable expectation of being called upon to do so. *McClurg v. Dallas Jones Enters. Inc.*, 542 F. Supp. 3d 595, 599 (W.D. Ky. 2021). Defendants have presented evidence that Plaintiffs and Opt-In Plaintiff Tapia Vera transported and delivered harvested commodities across state lines at least three times per year in each year of their employment with KB or had a reasonable expectation that they could be called to do so. (*See* Beauchamp Decl., Ex. A, ¶ 11). However, the assignments of KB's H-2A workers varied on a daily basis, and, while most, if not all, of the drivers performed transport work that required them to cross state lines, Plaintiffs cannot show that they are the victims of a "single FLSA-violating decision, policy, or plan" that violated wage-and-hour laws if they themselves were overtime exempt and are not similarly situated to truck drivers who do not meet the requirements of this exemption. For these reasons, Plaintiffs' motion for conditional certification must be denied.

### C. Any Collective Should Be Limited to Potential Plaintiffs Who Worked at the Same Worksites as Plaintiffs and Opt-In Plaintiff Tapia-Vera.

Plaintiffs fail to proffer evidence sufficient to justify the conditional certification of a *nationwide* collective. Even if the declarations attached to the Motion are considered, the personal experiences of three employees working in a handful of states is not sufficient

10

to establish a single *nationwide* FLSA-violating decision, policy, or plan. *E.g., Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, at *4 (S.D. Cal. 2008) (denying notice in part because "[p]laintiffs' affidavits...provide no real evidence, beyond their own speculative beliefs, suggesting that all JPMorgan loan officers across the country, regardless of location or experience,...are required to work in the same manner"). The only other basis for their claims that the putative collective is similarly situated is *hearsay* from former co-workers. *See Ward*, 2018 WL 1604622, at *7 (concluding that Plaintiffs failed to put forth substantial allegations that they were similarly situated to drivers in other states "as the Amended Complaint and Declarations shed very little light on drivers outside Colorado," and deeming supporting evidence insufficient where "[p]laintiffs invite the court to infer that drivers from [] additional states worked under similar conditions, based solely on Plaintiffs' experiences in Colorado"). Conspicuously absent is a declaration from any non-Plaintiff co-worker, or even any information as to any other putative class member's job duties, supervisors, or work locations. Without any support, it would be inappropriate to infer substantial similarity between employees who performed different job duties, at locations that spanned over multiple different states, and who had differing personal experiences.Therefore, to the extent that the Court is inclined to grant the Motion, the Collective should be limited to workers who worked in the same states and at the same worksites as the declarants.

## II.   Plaintiffs' Proposed Notice Is Overly Broad.

If the Court authorizes notice, it should not approve Plaintiffs' proposed form (the "Proposed Notice") as it is objectionable.

11

First, Plaintiffs' proposed definition of "[a]ll individuals admitted as H-2A temporary foreign workers who were employed by Defendants as heavy tractor-trailer drivers at any time" during the three years prior to the issuance of the proposed notice is overbroad. The Court has "the power to modify an FLSA collection action definition on its own if the proposed class action definition does not encompass only 'similarly situated' employees." *Fuentes v. Compadres, Inc.*, No. 17-cv-01180-CMA-MEH, 2018 WL 2126840, at *3 (D. Colo. May 9, 2018). As set forth above, Plaintiffs have failed to provide any allegations – much less *substantial* allegations – that the alleged wrongful conduct extended beyond their own personal experiences or their worksites. Thus, the notice should be narrowed to the putative collective members who worked in the same states as the Plaintiffs (Texas, Oklahoma, Colorado, New Mexico, and Kansas) and for the same customers as Plaintiffs. Accordingly, the Court should, if anything, grant certification only as to H-2A workers who worked at the same locations Plaintiffs worked.

Second, the Proposed Notice fails to adequately inform recipients of the potential consequences and responsibilities of joining the lawsuit, such as participating in discovery, and appearing at a deposition or trial. Such language has been required by other courts in this Circuit. *See Darrow v. WKRP Mgmt., LLC, No.* 09-CV-01613-CMA-BNB, 2012 WL 638119, at *6 (D. Colo. Feb. 28, 2012) (requiring language informing opt-ins they "may be required to submit documents and written answers to questions and to testify under oath at a deposition, hearing, or trial"); *Wass v. NPC Int'l, Inc.*, No. 09-2254, 2011 WL 1118774, at *10 (D. Kan. Mar. 28, 2011); *Hadley v. Wintrust Mortg. Corp.*, No. 10-2574, 2011 WL 4600623, at *3 (D. Kan. Oct. 3, 2011), *vacated on other grounds*, 2011

12

WL 8177791 (D. Kan. Nov. 4, 2011). The putative collective members should be fully aware of the obligations they are undertaking should they opt-in to the proposed collective. Defendants request that the following language be included in any notice disseminated to putative collective members:

> While this suit is pending, you may be required to submit documents and written answers to questions and to testify under oath at a deposition, hearing and/or trial, which may take place in Denver, Colorado.

Third, the Proposed Notice does not provide any meaningful statement of Defendants' position, let alone an accurate description of Defendants' defenses. It states only that Defendant "deny that Plaintiffs and other workers are owed overtime wages." (Doc. No. 37-8 (Proposed Notice) at p. 3). Defendants propose the addition of the following language to properly articulate their positions as to liability and damages: (1) Defendants believe Plaintiffs and other workers were properly paid for all hours worked; and (2) Defendants deny that it violated the FLSA's overtime requirements.

Fourth, Defendants request that the Court omit the following language from any court-approved notice on the grounds that it incorrectly states the relationship between the Named Plaintiffs and putative collective members:

> By joining, you designate Jaime Alberto Delgado-Bojorquez, Oscar Jovanny DiazRamirez, Jose Aniel Lopez-Valdez, and Rey David Aviña-Coto to make decisions on your behalf concerning this case. The decisions and agreements made in this lawsuit will affect your claims.

(Doc. No. 37-8 (Proposed Notice) at p. 3). In FLSA collective actions, opt-in plaintiffs do not formally delegate decision-making authority to named plaintiffs. While named plaintiffs initiate the suit for "similarly situated" employees, each opt-in plaintiff becomes a party-

13

plaintiff with their own stake in the proceeding. For this reason, this language should be omitted from any court-approved notice as it misstates the relationship between the named plaintiffs and opt-in plaintiffs.

Finally, Defendants object to Plaintiffs' Proposed Text/What's App Message because it fails to inform potential plaintiffs that it is not a communication from Defendants. Defendants frequently use What's App to disseminate personnel documentation and communicate with current employees. Defendants request that any Text/What's App Message disseminated to potential plaintiffs contain a disclaimer that the communication is a court-approved notice concerning a lawsuit filed by Plaintiffs and is not a communication from Defendants.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion.

Dated: March 6, 2026		FISHER & PHILLIPS, LLP

		*s/ Vance O. Knapp*
		Vance O. Knapp
		Rebecca Hause-Schultz
		Monica Simmons
		1125 17th Street, Suite 2400
		Denver, CO 80202
		Telephone: (303) 218-3650
		Facsimile: (303) 218-3651
		vknapp@fisherphillips.com
		rhause-schultz@fisherphillips.com
		msimmons@fisherphillips.com

		***Attorneys for Defendants***

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, March 6, 2026, a true and correct copy of the foregoing was electronically filed using the CM/ECF system which shall provide notice and a copy upon all parties.

Dawson Morton
Dawson Morton LLC
1808 Sixth Street
Berkeley, CA 94710
dawson@dawsonmorton.com

James M. Knoepp
James M. Knoepp, Attorney at Law
1612 Crestwood Drive
Columbia, SC 29205
jim@dawsonmorton.com

*Attorneys for Plaintiff*

*s/ Vance O. Knapp*
Vance O. Knapp
For Fisher & Phillips, LLP