IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:25-cv-847-CNS-NRN

JAIME ALBERTO DELGADO-BOJORQUEZ,
OSCAR JOVANNY DIAZ-RAMIREZ,
JOSE ANIEL LOPEZ-VALDEZ, and
REY DAVID AVIÑA-COTO, on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

KB CUSTOM AG SERVICES, LLC, and
KYLE BEAUCHAMP,

Defendants.

---

## DEFENDANTS KB CUSTOM AG SERVICES, LLC, AND KYLE BEAUCHAMP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION

---

Defendants KB Custom AG Services, LLC ("KB"), and Kyle Beauchamp ("Mr. Beauchamp") (collectively, "Defendants"), by their undersigned counsel, and pursuant to Fed. R. Civ. P. 23 and D.C.COLO.LCivR 7.1(d), respectfully submit their Response in Opposition to Plaintiffs' Motion for Rule 23 Class Certification [Doc. No. 39] (hereafter, the "Motion").

### I. INTRODUCTION AND SUMMARY OF DEFENDANTS' ARGUMENT

Plaintiffs contend that Defendants breached both their and other putative class members' employment contracts, or, in the alternative, are liable to them in quantum meruit. (Compl. [Doc. No. 1] at ¶¶ 114-142). Plaintiffs have taken aim at Defendants for

the purpose of surreptitiously advancing Plaintiffs' counsel's true goal – challenging the way the U.S. Department of Labor requires agricultural employers to compensate migrant farmworkers under the H-2A program.

Plaintiffs' Motion for Rule 23 Class Certification (the "Motion") must be denied. Class certification is not appropriate because individual issues, and not common questions, predominate Plaintiffs' breach of contract and quantum meruit claims. Specifically, a determination of liability to each Plaintiff and putative class member will turn on, *inter alia*: (1) whether Defendants breached a duty owed to the Plaintiff/putative class member under the Job Order under which they were hired; (2) whether Defendants paid the class member the Adverse Effect Wage Rate ("AEWR") for all hours he or she worked while employed; (ii) whether the class member was exempt from federal and state overtime requirements; (iii) whether the Plaintiff/putative class member expected to receive overtime for his or her work; and (iv) whether it was unjust for KB not to pay each Plaintiff/putative class member overtime. To certify the class proposed by Plaintiffs would require hundreds of mini-trials to determine whether, in fact, Defendants are liable to a single Plaintiff or putative class member. The issues of liability and damages are inherently individual, and cannot be efficiently resolved on a class-wide basis. Thus, Plaintiffs' proposed class does not satisfy the commonality and predominance requirements of Rules 23(a) and 23(b)(3). Commonality is also not satisfied because different Adverse Effect Wage Rate ("AEWR") rules applied to the Job Orders – the alleged contracts at issue – under which Plaintiffs were hired, and, therefore, the court's analysis of whether Defendants' breached the material terms of each Job Order will

inherently be individualized depending on when each Plaintiff and/or putative class member was hired.

Likewise, Plaintiffs cannot meet Rule 23(a)'s adequacy requirement because their interests are antagonistic to, or in direct conflict, with some of the putative class members they seek to represent. It is Plaintiffs' burden to prove there is not a conflict of interest among the proposed class members, a burden they have not and cannot meet. Plaintiffs are seeking declaratory judgments—a form of prospective relief—that would jeopardize the employment and wages of current employees, many of whom may not wish to pursue contractual or extra-contractual relief. For this reason, Plaintiffs' interests are in direct conflict with those of Defendants' current employees, many of whom Plaintiffs seek to represent.

For these reasons, the Court should deny Plaintiffs' Motion in its entirety.

## II.   STATEMENT OF RELEVANT FACTS

KB is a limited liability company that offers agricultural clients, including dairies, custom forage harvesting services. (*See* **Exhibit A**, Declaration of Catie Beauchamp ("Beauchamp Decl.") ¶ 4).[1] KB employs temporary foreign workers through the federal H-2A visa program to perform this work.[2] (*Id.* at **Exhibits 1-4**; *see also* **Exhibit B**,

---

[1] Forage harvesting is the mechanical process of cutting, chopping, and collecting crops like corn, sorghum, or grass to produce high-quality fermented livestock feed known as silage. (Beauchamp Decl., Ex. A, ¶ 5). The harvesting process is as follows: (1) the forage is severed at the base of the stalk, and a merger or triple mower consolidates it into a windrow; (2) a harvesting machine traverses the windrow and chops the forage into uniform pieces; (3) the harvesting machine then propels the chopped feedstuff by blower into a trailer towed by a tractor or semi-truck; and (4) the forage is transported to the point of initial silage processing, typically at a dairy farm. (*Id.* ¶ 6).

[2] The H-2A visa program allows employers to hire foreign agricultural workers to perform temporary or seasonal labor in the United States. *See* 8 U.S.C. § 1188. Employers file a temporary

Declaration of Monica Simmons (Simmons Decl."), at **Exhibit 1**). Some of the H-2A workers employed by KB are required to haul forage using heavy trucks to points of first processing (typically dairies). (*See* Beauchamp Decl., **Ex. A**, ¶¶ 6-7).

The Company's operations hub is located in Hartley, Texas, which is in the panhandle of the state, close to the borders of Oklahoma, Kansas and Colorado. (*Id.* ¶ 9). Because of the locations of KB's operation hub and points of delivery, KB's drivers frequently cross state lines when transporting and delivering harvested commodities. (*Id.*). Their routes and assignments vary on a daily basis. (*Id.*)

Plaintiffs are Mexican nationals and former employees of KB who were hired under the federal H-2A visa program. (*Id.* ¶ 10). Plaintiffs and the proposed class were hired under four separate Job Orders, which will be referred to herein as the 2022 Job Order, the 2023 Job Order, the 2024 Heavy Haul Job Order, and the 2025 Job Order, respectively. (Beauchamp Decl., **Ex. A**, ¶ 8 and Exs. 1-4). By the very terms of these Job Orders, Plaintiffs and the proposed class were promised different hourly rates in exchange for their services. (*Id.* ¶¶ 13-15 & Ex. 1-4). This is in part because, in 2023, the DOL overhauled its methodology for calculating Adverse Effect Wage Rates ("AEWR") – the hourly rates below which KB could not pay its H-2A workers or their domestic

---

labor certification with the U.S. Department of Labor ("DOL") including a job offer, known as a "job order." (Compl. [Doc. No. 1] ¶ 20.) The "job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States." (*Id.* (citing 20 C.F.R. § 655.12(a)(2)). H-2A employers must pay their employees the highest of (1) the Adverse Effect Wage Rate ("AEWR"), (2) the prevailing hourly wage or piece rate for the geographical region and type of work, (3) a collectively bargained wage, or (4) the Federal or State minimum wage. 20 C.F.R. §§ 655.120(a), 655.122(a).

counterparts. *See* 88 Fed. Reg. 12760 (the "2023 Final Rule").[3] The 2022 and 2023 Job Orders used wage rates based on pre-2023 Final Rule methodology, while the 2024 Heavy Haul Job Order adopted wage rates in line with the new methodology established by the 2023 Final Rule. (Beauchamp Decl., **Ex. A**, at Exs. 1-3).

Plaintiffs seek to certify a class of "truck drivers" employed by Defendants under the aforementioned Job Orders for purported FLSA overtime violations. In support of the Motion, Plaintiffs have submitted three substantially similar declarations, as well as copies of the aforementioned Job Orders. The declarants—Plaintiff Delgado-Bojorquez, Plaintiff Diaz-Ramirez, and Class Member Victor Alexis Tapia-Vera ("Class Member Tapia-Vera")—attempt to paint themselves as non-exempt from the FLSA's overtime provisions by declaring that they: worked as "cargo truck driver(s)" for Defendant; worked more than forty hours a week; were not paid overtime; and that at no time during their employment with Defendants did they operate a "harvesting machine" or harvest agricultural products. (*See* the Declaration of Jaime Alberto Delgado-Bojorquez [Doc. No. 39-5] ("Delgado-

---

[3] The 2023 Final Rule establishing a new methodology for determining hourly AEWRs for non-range occupations (*i.e.*, all occupations other than herding and production of livestock on the range) for temporary labor certifications in the H-2A program. (*Adverse Effect Wage Rate Methodology for the Temporary Employment of H–2A Nonimmigrants in Non-Range Occupations in the United States, Final Rule,* 88 Fed. Reg. 12760 (Feb. 28, 2023)). Under this methodology, AEWRs are determined based upon the Standard Occupation Code (SOC) assigned to a worker. *Id.* at 12766. This resulted in the imposition of higher AEWRs for job opportunities involving driving duties. *Id.* at 12780. The 2023 Final Rule was rescinded in its entirety in August 2025. *(See Teche Vermillion Sugar Cane Growers v. Lori Chavez-DeRemer*, No. 6:23-Civ-831, 2025 BL 304733 (W.D. La. Aug. 25, 2025) (the "*Vermillion* Judgment") (a copy of which is attached hereto as **Exhibit C**). In October 2025, the DOL released an interim final rule (IFR) with yet another methodology for calculating hourly AEWRs for non-range occupations, including those that require workers to drive heavy trucks. *See Adverse Effect Wage Rate Methodology for Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 90 Fed. Reg. 47914 (Oct. 2, 2025) (the "2025 Interim Final Rule").

Bojorquez Decl.") ¶¶ 2, 5, 8; the Declaration of Oscar Jovanny Diaz Ramirez [Doc. No. 39-6] ("Diaz-Ramirez Decl.") ¶¶ 2, 5, 8; and the Declaration of Victor Alexis Tapia-Vera [Doc. No. 39-7] ("Tapia-Vera Decl.") ¶¶ 2, 6, 9). The declarants also offer hearsay testimony that other unnamed drivers also worked more than 40 hours a week and "did not receive overtime pay." (Delgado-Bojorquez Decl. ¶ 6; Diaz-Ramirez Decl. ¶ 6; Tapia-Vera Decl. ¶ 7). Plaintiffs and Class Member Tapia-Vera worked only in the states of Texas, Kansas, Colorado, Oklahoma, and New Mexico during their employment with KB. (Beauchamp Decl., **Ex. A**, at ¶¶ 10, 17-19).

### III.   LEGAL ARGUMENT

#### A. Plaintiffs Bear a Heavy Burden for Class Certification under Rule 23.

Unlike the lenient standard for certification of an opt-in class under the FLSA, Plaintiffs' burden to certify a Rule 23 class for their state law claims is substantial. They must first satisfy all four requirements under Rule 23(a): (1) numerosity; (2) commonality (questions of law or fact common to the class); (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). They must also satisfy both components of Rule 23(b)(3): (1) common issues of fact or law must predominate over individual issues, and (2) class action treatment must be superior to other forms of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 613 14 (1997). The Court must conduct a "rigorous analysis" to determine if Plaintiff has offered sufficient evidence to demonstrate that all of the prerequisites to class certification are satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011); *see also Rex v. Owens ex rel Oklahoma,* 585 F.2d 432, 435 (10th Cir. 1978)

6

(recognizing a plaintiff seeking to certify a class is required to show "under a strict burden of proof, that all of the requirements of [Rule 23(a)] are clearly met"). The Court cannot simply accept Plaintiffs' unsupported allegations in the Complaint or Motion in evaluating whether they met their burden. *See Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard"). Rather, the Court must "delve beyond the pleadings" in order to "make whatever factual and legal inquiries are necessary" to determine whether they established each of Rule 23's elements by a preponderance of the evidence. *Id.* at 306.

Looking beyond the mere allegations in the Complaint and analyzing the few facts Plaintiffs offer vis-à-vis the wage statements and declarations attached to the Motion, Plaintiffs have not met their burden.

### B. Plaintiffs Cannot Establish Commonality.

Rule 23(a)(2) requires the existence of questions of law or facts "common" to the putative class. This requirement "is easy to misread, since any competently crafted class complaint literally raises common questions." *Dukes*, 564 U.S. at 349 (internal quotations omitted). Instead, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Id*. at 350 (emphasis in original). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

In this case, common questions do not abound. Plaintiffs' breach of contract and quantum meruit claims demand a detailed, fact-specific inquiry into the material terms of four, non-identical job orders, a kaleidoscopic landscape of AEWR methodologies, the

expectations of each plaintiff/putative class members, and whether each plaintiff/putative class member were exempt from federal and state overtime requirements. At a minimum, the Court will be required to make the following determinations with respect to each class member:

- Which Job Order(s) (*i.e.* contract) was the Plaintiff or putative class member employed under?
- Did Defendants pay the Plaintiff or putative class member the contractually promised rate for all hours he or she worked while employed?
- Whether the Plaintiff or putative class member qualified for the FLSA's Agricultural Exemption, 29 U.S.C. §§ 213(a)(6) & 213(a)(13), or Motor Carrier Exemption, *id.* § 213(b)(1)?
- Did the Plaintiff or putative class members expect overtime compensation?
- Did Defendant engage in wrongdoing by denying them overtime?

Importantly, when spread across a class of hundreds, any one of these individual questions could be sufficient in and of itself to thwart a finding of commonality.

> i. *Determining Which Job Order Each Plaintiff or Putative Class Member Was Hired Under is An Individualized Inquiry*

Plaintiffs' Complaint alleges that Defendant breached Plaintiffs' employment contracts by not paying them the "legally-required wage rate for the jobs they performed." Compl. [Doc. No. 1] ¶ 119. Plaintiffs were hired under four separate contracts. (*See* Beauchamp Decl., Ex. A, at ¶ 12 & Ex. 1-4). Each Job Order promises different wage rates depending on a myriad of factors, including: the geographic location of the work performed by the worker; the DOL's methodology for establishing the AEWR at the time

the Job Order was written; and the nature of the worker's job duties. *Id.* Although Plaintiffs allege that the terms and conditions of these contracts are "uniform," Mot. at p. 9, they are anything but. Determining whether each Plaintiff or putative class member has a viable claim for breach of contract will necessarily require individualized inquiries of the dates on which they were hired and the Job Order(s) under which they were hired. Courts have found the commonality requirement lacking in cases involving contracts with equally disparate terms. *See Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 340 (4th Cir.1998) ("[P]laintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts."); *cf. Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725. F.3d 1213, 1219 (10th Cir. 2013) (plaintiff did not meet commonality requirement because he did not show leases at issue contained identical terms).

> ii. *Determining Whether Defendants Paid a Plaintiff or Putative Class Member an Unlawful Wage Rate is an Individualized Inquiry*

Plaintiffs also allege that Defendant breached both their and the putative class members' employment contracts by paying them an "unlawful wage rate." Mot. at p. 3. Determining what wage rate applies to each worker will necessarily depend on an individualized inquiry into: (i) whether each Plaintiff or putative class member operated a heavy truck or tractor-trailer in any given workweek; (ii) whether they should be paid an AEWR calculated in accordance with pre-2023 DOL rules, the 2023 Final Rule, or the methodology announced in the 2025 Interim Final Rule); and (iii) whether they were, in fact, paid the lawful wages in each workweek that they performed work for KB. The determination of Defendants' liability to each plaintiff and putative class member for

9

breach of contract would require a highly individualized, week-by-week inquiry of the job duties performed by the plaintiff and putative class member and the accepted methodology for calculating their hourly wage. These individualized inquiries will be necessary to determine both the material terms of each employee's contract and whether KB breached said term during any point in their employment.

        *iii.*      *Determining Whether A Plaintiff or Class Member Meets the FLSA's Agricultural and/or Motor Carrier Exemptions is a Highly Individualized Inquiry*

Plaintiffs also allege that Defendants breached both their and the putative class members' employment contracts by failing to pay them overtime. (*See* Mot. [Doc. No. 39] at p. 9). Plaintiff alleges that this determination turns only on "whether overtime wages were owed for the work performed in Defendants' business operations," and "not on facts or job duties of any individual truck driver." *Id.* This is simply not true. In fact, both liability for Plaintiffs' overtime claims, as well as Defendants' defenses to such claims, require an individualized, week-by-week analysis of the job duties performed by each Plaintiff and putative class member.

For example, Defendants have raised the defense that plaintiffs and/or the putative class members qualify as overtime exempt under the FLSA's Agricultural Exemption, 29 U.S.C. §§ 213(a)(6) & 213(a)(13), or, alternatively, the Motor Carrier Exemption, *id.* § 213(b)(1). Whether the Agricultural Exemption applies to a particular plaintiff or putative class member will hinge on whether the job duties they performed in any particular workweek were a form of secondary agriculture that fall within the exemption. *See* 29 C.F.R. § 780.129*; see also Sariol v. Florida Crystals Corp.*, 490 F.3d 1277, 1279-80 (11th

Cir. 2007) (defining secondary agricultural and examining which duties meet this definition). Since each class member operated different machinery and performed different job duties on a weekly basis, whether they fall within this exemption cannot possibly be resolved with common proof. Likewise, whether the Motor Carrier Exemption applies to a particular plaintiff or putative class member depends on an examination of, *inter alia*: whether the plaintiff or putative class member qualifies as a driver under the exemption and whether the plaintiff or putative class member transported goods in interstate commerce. (*See* 29 U.S.C. § 213(b)(1) (establishing the requirements for the exemption)). To determine which drivers cross state lines, and how often they do, will require individualized discovery from each driver as well as an examination of the company's records for each driver. (Beauchamp Decl., Ex. A, ¶ 9). These individual issues will overwhelm whatever common questions otherwise exist. Both this Court and other courts have arrived at this conclusion. *See Cooper v. Noble Casing, Inc.*, No. 15-cv-1907, 2016 WL 6525740, at *4*-*5 (D. Colo. Nov. 3, 2016) (denying class certification on account that plaintiff did not meet commonality or predominance requirements because determination of whether putative class members met motor carrier exemption required individualized, week-by-week determinations); *Noll v. Flowers Foods Inc.*, 478 F. Supp. 3d 59, 66-67 (D. Me. 2020) ("Although this case involves several questions common to the class that can be resolved on representative evidence, Plaintiff . . . has failed to demonstrate that the [small-vehicle] exception to the MCA defense—the issue for which Plaintiff bears the burden—is anything other than thoroughly individualized."). This alone makes Plaintiffs' breach of contract claim inappropriate for class treatment.

        *iv.*    *Plaintiffs' Quantum Meruit Claims Also Turn On Individualized Inquiries*

Plaintiffs' quantum meruit claims also fail to satisfy Rule 23(a)'s commonality requirement. To recover in quantum meruit under Colorado law, a plaintiff must demonstrate that: (1) the defendant received a benefit; (2) at the plaintiff's expense; and (3) it would be unjust for the defendant to retain that benefit without paying for it. *In re: Gilbert,* 346 P.3d 1018, 1023 (Colo. 2015). The third element is a fact-intensive inquiry that requires a court to look to, among other things, the *intentions, expectations, and behavior* of the parties. *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842, 847 (Colo. 2012). Each class members' quantum meruit claim would demand an examination of (1) each employee's expectation as to overtime and/or wages; and (2) whether Defendants engaged in wrongdoing. These individualized questions are not suitable for class-wide adjudication. *See Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009) (affirming denial of class certification of quantum meruit claim for failure to satisfy Rule 23(b)(3)'s predominance requirement); *see also Carter v. Paschall Truck Lines, Inc.*, No. 5:18-cv-41, 2023 WL 359559, at *16 (W.D. Ky. Jan. 23, 2023) (unjust enrichment claim unsuitable for class certification because each claim involved an examination of how the employees "expected defendants to reward them").

In sum, Plaintiffs have not demonstrated a common issue that has the ability to "produce a common answer to the crucial question" whether Defendants is liable to the Plaintiffs of breach of contract or quantum meruit, *Dukes*, 131 Ct. at 2552, and have not met their burden with respect to Rule 23(a)'s commonality requirement.

### C. Plaintiffs are Not Adequate Class Representatives.

Plaintiffs' conflicts with KB's current H-2A workers render them inadequate class representatives. Plaintiffs may sue as representatives of absent litigants only if they "will fairly and adequately protect the interests of the class.'" *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002) (quoting FED. R. C IV. P. 23(a)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* at 1187-88. Plaintiffs bear the burden of showing that they are adequate class representatives. *Dukes*, 131 S.Ct. at 2551.

In their Motion, Plaintiffs state, in a conclusory fashion, that they "have no conflicts with the other class members, and that their interests are the same."(Mot. [Doc. No. 39] at p. 11).  But Plaintiffs conveniently overlook serious potential – and, in all likelihood, actual – conflicts between Plaintiffs and certain absent class members.

The conflicts at issue are relatively straightforward. The Named Plaintiffs are terminated employees who are seeking declaratory judgments and prospective relief. The proposed nationwide class, however, includes H-2A workers who are currently working for KB. It is entirely plausible, and in fact likely, that some of these workers were (1) not hired until after the 2023 Final Rule was rescinded in its entirety; (2) obtained CDL's at no cost or at the cost of former employers; and/or (3) had different expectations with respect to their wages and entitlement to overtime. Although the interests and incentives of the Named Plaintiffs and Opt-In Plaintiff Tapia-Vera are aligned, they are in direct

conflict with other H-2A workers who have no entitlement and/or expectation to wages or overtime. Because Plaintiffs have failed to establish their claims are typical and they will fairly and adequately protect the interests of the proposed class members, Plaintiffs' Motion should be denied.

### D. Plaintiffs Cannot Meet Their Burden of Satisfying Rule 23(b)(3).

Even if Plaintiffs could satisfy Rule 23(a)'s commonality or adequacy requirements, which they cannot, class certification is still not appropriate because they cannot establish either of the requirements under Rule 23(b).

#### 1. Common Questions Do Not Predominate Over Plaintiffs' Breach of Contract or Quantum Meruit Claims.

Even if Plaintiffs had raised common questions under Rule 23(a) (which they did not), individualized issues would still preclude a finding that common questions predominate under Rule 23(b)(3). "[T]he predominance criterion is far more demanding" than the Rule 23(a)(2) commonality requirement. *Amchem Prods.*, 521 U.S. at 623 24.

As detailed above in Section B, the central dispute in this case (*e.g.*, whether KB breached material terms of Plaintiffs' employment contracts or engaged in wrongdoing) requires individualized inquiries into the terms and conditions of each class members' Job Orders and the job duties they performed on a week-by-week basis. Liability issues aside, Plaintiffs cannot prove class-wide damages. Rule 23(b)(3) requires a putative plaintiff to establish damages are capable of measurement on a class-wide basis. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (finding the failure of the proponent of the class to offer a damages model that was "susceptible of measurement across the entire class for purposes of Rule 23(b)(3)" was fatal to the certification question). In other words,

Plaintiffs must identify a measurement method that can be applied class-wide and ties the plaintiffs' legal theory of impact to a calculation of damages–even if it requires inquiry into the merits of a claim.  *Id.*

Here, Plaintiffs have not offered any theory of class-wide damages, much less a reasonable method of calculating damages for all class members.  Questions of individual damage calculations in this case will inevitably overwhelm *any* questions common to the class. Resolution of class members' claims would devolve into individual inquiries requiring particularized evidence from each class member as to the specific hours worked in each workweek, the vehicles they operated, the routes they drove, the specific customers they served, and whether they meet any exemptions to the FLSA's overtime requirements. The result would be that individual damage calculations in this case would overwhelm any common questions and abrogate any supposed efficiencies associated with aggregating their claims.  Where, as here, "the computation of damages will require separate mini-trials, then the individualized damages determination predominates over common issues, and a class should not be certified." *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 177 (D. Kan. 1996).

## IV.    CONCLUSION

Plaintiffs' claims for breach of contract and quantum meruit are not appropriate for class treatment. As such, Plaintiffs' Motion should be denied.

Dated:  March 6, 2026

Respectfully submitted,

FISHER & PHILLIPS LLP

*s/ Vance O. Knapp*

Vance O. Knapp
1125 17th Street, Suite 2400
Denver, CO  80202
Telephone:  (303) 218-3650
Facsimile:  (303) 218-3651
vknapp@fisherphillips.com

Rebecca Hause-Schultz
621 Capitol Mall, Suite 2400
Sacramento, CA 95814
Telephone: (916) 210-0391
rhause-schultz@fisherphillips.com

Monica L. Simmons
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
Telephone: (215) 230-2129
msimmons@fisherphillips.com

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that, on March 6, 2026, a true and correct copy of the foregoing **DEFENDANTS KB CUSTOM AG SERVICES, LLC AND KYLE BEAUCHAMP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of same to counsel of record for the Parties.

                                          _s/ Robin Havens_
                                          Robin Havens
                                          Legal Secretary