IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00847-CNS-NRN

JAIME ALBERTO DELGADO-BOJORQUEZ,
OSCAR JOVANNY DIAZ-RAMIREZ,
JOSE ANIEL LOPEZ-VALDEZ, and
REY DAVID AVIÑA-COTO, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.

KB CUSTOM AG SERVICES, LLC, and
KYLE BEAUCHAMP,

      Defendants.

---

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION
## FOR CERTIFICATION OF RULE 23 CLASS ACTION

ECF No. 39 (PLAINTIFFS' MOTION), FILED JANUARY 23, 2026
ECF No. 51 (DEFENDANTS' OPPOSITION), FILED MARCH 6, 2026

---

Plaintiffs seek certification of a class of "heavy tractor-trailer truck drivers." (ECF No. 39 at 2.) Defendants do not dispute Rule 23 requirements related to numerosity, nor that an ascertainable class exists. (ECF No. 39 at 6-7.) Defendants' opposition also does not dispute typicality and the superiority of a class action to resolve these claims. (ECF No. 39 at 14-15) (setting forth superiority).

Defendants *do* dispute commonality and whether Plaintiffs are adequate representatives. (ECF No. 51 at 7-8 and 13.) Defendants' Opposition also claims a "surreptitious[]" purpose of challenging compensation to "migrant farmworkers under the H-2A program," ECF No. 51 at 2, and claims that the compensation under the H-2A

1

program is not, in fact, a common issue because "individual issues … predominate,"
ECF No. 51 at 2.[1] Defendants also claim that seeking higher legally-required truck
driver wages for the class makes Plaintiffs' interest "antagonistic to, or in direct conflict,
with some of the putative class members" because the class members might want to be
paid lower, not higher, wages. (ECF No. 52 at 3.) As discussed below, Defendants'
arguments are unavailing and Plaintiffs' motion for class certification should be granted.

### I. Plaintiffs Have Shown the Existence of Multiple Common Questions of Law and Fact.

"[T]o demonstrate common questions apply to the class, . . . [a movant] must
show 'the capacity of a class-wide proceeding to generate common answers apt to drive
the resolution of the litigation.'" *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1192
(10th Cir. 2023) (cleaned up). Plaintiffs have done so here. Plaintiffs identified several
common issues: (1) whether Defendants paid the Plaintiffs and other class members an
illegally low wage rate in 2022, 2023, and 2025 instead of a heavy and tractor-trailer
truck driver rate; (2) whether Defendants were legally obligated to pay overtime wages
in all years between 2022 and 2025 but failed to do so; and (3) whether Defendant Kyle
Beauchamp is individually liable along with KB Custom Ag Services, LLC. (ECF No. 39
at 8.) Defendants' opposition, in reality, does not dispute the existence of these
common issues, but argues—incorrectly—that the resolution of each issue will require
some type of individual inquiry.

---

[1] The claimed "surreptitious[]" purpose is "challenging the way the U.S. Department of
Labor requires agricultural employers to compensate migrant farmworkers[.]" (ECF No.
51 at 2.) But this suit involves a private defendant, not the U.S. Department of Labor;
tractor-trailer truck drivers, not migrant farmworkers; and a custom harvester and
hauler, not an agricultural employer.

A.        Whether Defendants Paid an Illegally Low Wage Rate is a Common Issue.

With respect to the wage rate issue, Defendants argue that Plaintiffs fail to establish commonality because the wage rate was different each year that Defendants applied for H-2A workers, arguing that this impacted the uniform nature of the employment contracts. (ECF No. 51 at 8-9). Defendants point to no other aspect of the contract that was different from year to year other than the wage rate. Nor could they. The federal government requires employers to use a standard clearance order form as part of the application to employ H-2A workers that has a standard set of promises governing employers' compliance with various H-2A program legal requirements. (ECF No. 39-1 at 6-9; ECF No. 39-2 at 5-7; ECF No. 39-3 at 5-7; ECF No. 39-4 at 5-7).

Those standard forms and their required promises did not change during the years the Plaintiffs and other class members were employed by the Defendants. Defendants' reliance on *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998) is inapposite. In that case, which involved multiple franchisees, the contracts varied from franchisee to franchisee and "contain[ed] materially different contract language, and the actual contractual undertaking of each was subject to several critical variables." *Id.* at 340. Here, the contracts are uniform and based on a standard government form and a set of laws and regulations. The hourly wage paid varied slightly by year, but the terms of the Plaintiffs' and class members' contracts, and their common wage complaints, remain the same across all of the years in question—the Defendants did not pay them the correct hourly wage rate for the type of work they performed as heavy tractor-trailer truck drivers and failed to pay them overtime wages. *See Mencia v. Allred*, 808 F.3d 463, 471-73 (10th Cir. 2015) (holding that H-2A worker whose work

3

was misclassified by his employer entitled to recovery pursuant to contract and quantum meruit); *Gonzalez v. O.J. Smith Farms*, Civ. Act. No. 5:20-cv-00086-FL, 2021 WL 131263, at *4 (E.D.N.C. Jan. 13, 2021) (certifying H-2A class and finding "commonality requirement" satisfied on shared wage issue).[2]

The legal issue of whether it was proper for Defendants to pay heavy and tractor-trailer truck drivers a wage rate applicable to agricultural equipment operators will be common as to all class members, and damages will involve the simple math of computing the difference between what was paid and what should have been paid multiplied by each class members' hours of work on the payroll records.[3] *Mencia,* 808 F.3d at 473 ("In simple back-wages claims like this one, all a fact-finder needs to calculate damages is the hourly wage, the number of hours worked, and the amount already paid."); *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 377 (D.S.C. 2015) (finding commonality "regardless of the specific wage paid to individual class members" where issue was whether Defendants was "required to pay the supplemental prevailing wage" to all).[4]

---

[2] Where a district court conducted a "commonality inquiry by scrutinizing the proposed class for noncommon issues, rather than common ones" as Defendants propose here, "rather than [evaluating] whether Plaintiffs had demonstrated . . . at least one common question of law or fact, the resolution of which would drive the litigation" the Court committed legal error. *Sherman*, 84 F.4th at 1193 (holding "district court applied the incorrect legal standard" in evaluating commonality).

[3] Defendants again argue this is an issue of "whether they should be paid an AEWR," ECF No. 51 at 9, but that is mistaken. Plaintiffs were paid an AEWR in all years except 2024 when they were paid a wage rate for truck driving. The issue is whether *instead of the AEWR* Plaintiffs should have been paid a higher wage rate for the truck driving work they performed.

[4] Defendants appear to argue that there could never be common, class-wide issues, as they claim "issues of liability and damages are inherently individual." (ECF No. 51 at 2.) That position simply conflicts with controlling case law. "When one or more of the central issues in the action are common to the class and can be said to predominate,

B.    <u>Whether Defendants Were Required to Pay the Class Members Overtime
Wages is a Common Issue</u>.

Whether overtime is contractually owed is a class wide issue. (ECF No. 39 at

10); *see also Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 247 (W.D. Ark.

2010) (finding commonality in H-2A case where "Plaintiffs argue that Defendants are

required to but did not pay overtime wages . . . ."). Whether overtime was paid is not

seriously in dispute, as Defendants have never claimed to have paid any overtime and

do not do so in their opposition. Defendants incorrectly argue that whether overtime was

owed will "require an individualized, week-by-week analysis of the job duties[.]" (ECF

No. 51 at 10.) The job duties of Plaintiffs and the putative class members, which is

identified in the class definition, did not change. They were "driving semi trucks to

transport products." (ECF No. 39-1 at 2); (ECF No. 39-2 at 2) (same); (ECF No. 39-3 at

2) ("[d]riving semi-trucks to transport ag products"); (ECF No. 39-4 at 2) ("driving trucks

with trailers attached for transporting ag commodities").[5]

Defendants claim that overtime exemptions applied and so overtime was not

owed. But the issue of the applicability of either FLSA exemption claimed by Defendants

is a common legal issue that will apply to all class members. Whether Defendants can

prove entitlement to the agricultural exemption turns on the nature of their operations

and whether the hauling of silage on public roads is primary agriculture (it is not) or

secondary agriculture, and not on any facts that are individual or specific to a truck

---

the action may be considered proper under Rule 23(b)(3) even though other important
matters will have to be tried separately, such as damages[.]" *Tyson Foods, Inc. v.
Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).
[5] Defendants claim, mistakenly, that "each class member operated different machinery
and performed different job duties on a weekly basis[.]" (ECF No. 51 at 11.) This is not
true. Each class member drove a "heavy tractor-trailer truck," which is expressly stated
as part of the class definition. (ECF No. 39 at 2.)

driver. Defendants claim, for example, that assessing "secondary agriculture" will require an individualized inquiry. (ECF No. 51 at 10.) It will not, as Defendants are not farmers, and the class members did not perform their work "on a farm." (ECF No. 1 at ¶ 59) ("over-the-road truck drivers"); *see also* 29 C.F.R. § 780.156 (interpreting meaning of agricultural exemption and providing that "If not performed by the farmer, transportation beyond the limits of the farm is not within [] [the agricultural exemption], even when performed by a purchaser of the unharvested commodities who has harvested the crop."); *see also Wirtz v. Osceola Farms Co.*, 372 F.2d 584, 588 (5th Cir. 1967) (holding truck drivers not engaged in agriculture where "[t]he transportation work here is not work done on a farm, except to the extent the original movements in picking up loads are on farm property. The rest of each movement is off the farm (some on public highways) and at the mill site.").

Similarly, the motor carrier act exemption turns on the nature of Defendants' operations and whether they are regulated by the Secretary of Transportation. *See* 29 U.S.C. 213(b)(1) (exemption applies if the Secretary of Transportation regulates "qualifications and maximum hours of service"). That is a legal issue that will be decided based on facts common to the class and not on issues related to individual drivers.[6] And Defendants have argued, successfully, in another case that they fall outside of the regulations established by the Secretary of Transportation with respect to hours of service and qualifications of drivers because they are a custom harvester. *Estate of Ferrell v. KB Custom Ag Services, LLC*, No. 23-2384-DDC, 2025 WL 2461287, at *11-

---

[6] The class is composed of "heavy tractor-trailer truck drivers" and so Defendants argument about needing to evaluate the vehicles is incorrect—all class members operated large over-the-road trucks.

13 (D. Kan. Aug. 26, 2025) (arguing that negligence per se did not apply because Secretary of Transportation Motor Carrier Act regulations did not apply to them). While these are merits issues that will be resolved later, they demonstrate the commonality of the legal issues across all truck driver class members employed by Defendants.

      C.      The Quantum Meruit Claim Involves Common Issues.

Defendants argue that Plaintiffs' quantum meruit/unjust enrichment claims cannot be certified due to a lack of commonality because, in their view, individual determinations will need to be made as to each truck drivers' expectations regarding overtime pay and wage rates. (ECF No. 51 at 12.) This is a misstatement of Colorado law, as the 10th Circuit held when affirming class certification in a case involving immigration detainees who brought unjust enrichment claims alleging they had been forced to work for $1 per day. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 923 (10th Cir. 2018) ("Whether a plaintiff had a reasonable expectation of payment—while potentially relevant to the unjustness inquiry—is not itself an element of unjust enrichment under Colorado law."). Similar to *Menocal*, common issues exist here with respect to the required elements of a quantum meruit/unjust enrichment claim under Colorado law, such as whether the defendant received a benefit at the class members' expense. *Id.* at 923-24 (setting out legal standard and noting common issue of whether defendant benefitted from the class members' labor).

**II.      The Plaintiffs are Adequate Class Representatives and Do Not Have Conflicts with Current Employees Merely because They Are Not Presently Employed with Defendants**.

Defendants claim that "in all likelihood," ECF No. 51 at 13, there is a conflict between Plaintiffs and the class because some current employees might be happy with their wages. (ECF No. 51 at 13) (describing current employees, with whom there is

supposedly a conflict, as having "different expectations with respect to their wages").[7]

"Conflicts defeating class certification must be fundamental and go to specific issues in controversy." *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (cleaned up). The specific issue here is whether the wages were legally paid—about which there is no conflict. Courts have also previously rejected adequacy arguments that some workers stayed at the job longer or liked their boss better. *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007) (finding adequacy despite argument that plaintiff was "inadequate representative because, . . .  she has an inherent conflict of interest with members of the putative class who are [] currently working or may desire to continue working"). Similarly, the idea that some class members worked longer than the Plaintiffs does not create an adequacy issue. *Rosas v. Sarbanand Farms, LLC*, 329 F.R.D. 671, 687 (W.D. Wash. 2018) (rejecting adequacy challenge based on length of time plaintiffs worked because it "does not present a conflict of interest"). Here, where the differences in any damages would be just the amount of wages owed based on the length of work and the hours worked "the prospects for irreparable conflict of interest are minimal in this case because of the relatively small differences in damages and potential remedies." *Hanlon v. Chrysler*

---

[7] Defendants' adequacy argument is not entirely clear as at a later point they claim that the "other H-2A workers have no entitlement and/or expectation to wages or overtime" and so Defendants allege "their claims are [not] typical[.]" (ECF No. 51 at 14.) To the extent Defendants are now arguing that there are merits issues with the proposed class claims because there is "no entitlement … to wages," that argument is errorneous because adequacy focuses on actual conflict between Plaintiffs and the proposed class, not merits inquiries. *Medina v. Allen*, No. 4:21-cv-00102-DN-PK, 2024 WL 5186929, at *9 (D. Utah Dec. 19, 2024) (finding adequacy despite merits challenge and noting "the purpose of the adequacy inquiry is not to determine the merit of Plaintiffs' claims, but rather to determine whether the Plaintiffs are adequate representatives for absent class members").

*Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (finding adequacy). Plaintiffs are adequate

class representative and have no conflict with present employees.

### III.    Defendants Challenge to Predominance is Merely that Wages Claims Involve Math for Each Class Member.

Defendants challenge whether common issues predominate because they claim

the contractual breach claim and the quantum meruit claim "require[] individualized

issues into the terms and conditions of each class members' Job Orders and the job

duties they performed[.]" (ECF No. 51 at 14.) As already discussed, the job orders at

issue, of which there are only four (one for each year at issue), are essentially identical,

except for variations in the hourly wage rate, and applied to all truck driver class

members equally. *See, e.g.*, ECF No. 39-2 at 5-7; ECF No. 39-3 at 5-7. There are also

no issues as to "job duties" since the class definition sets the one and only job duty,

"foreign workers who were employed … as heavy tractor-trailer truck drivers[.]" (ECF

No. 39 at 2.) But again, Defendants' challenge is really just that the wage math of more

than two hundred truck drivers not paid the correct wage rate and not paid overtime

wages will "overwhelm *any* questions common to the class." (ECF No. 51 at 15.) "For

plaintiffs' wage rate claims, the court can determine what plaintiffs were entitled to be

paid . . .  a particular rate of pay [which] is another legal question that can be resolved

for the class." *Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142, 2018 WL 4257712,

at *6 (D. Kan. Sep. 5, 2018) (certifying class of H-2B worker wage claims).That

Defendants do not think the payroll math can be redone with correct legal wage rates is

not actually a challenge to predominance.[8] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259-

---

[8] Defendants claim that "particularized evidence [will be required … [as to] the vehicles
[] operated, the routes … [and] the specific customers[.]" (ECF No. 51 at 15.) No such

60 (11th Cir. 2004) ("where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification."). Defendants simply dispute that class wage claims can be brought at all, despite the fact that the math can easily be done in a spreadsheet.[9] That argument has repeatedly been rejected by courts. *See, e.g.*, *Menocal*, 882 F.3d at 922 ("The presence of individualized damages issues does not defeat the predominance of questions common to the [] class"); *McCormick v. HRM Resources, LLC*, No. 1:24-cv-00823-CNS-CYC, 2025 WL 2958834, at *12 (D. Colo. Oct. 17, 2025) ("the issue of whether 'damages vary between individuals,' . . . does not render Plaintiffs unable to meet their predominance burden").

## IV.    CONCLUSION

For the foregoing reasons, as well as those stated in their Motion and Memorandum, the Court should grant class certification of Plaintiffs' contract and quantum meruit claims.

Dated:    March 20, 2026                    Respectfully submitted,

                                            /s/ James M. Knoepp

---

inquiry will be necessary—all class members drove "heavy tractor trailer trucks," by definition. ECF No. 39 at 2. Neither the routes, nor the customers, change the nature of any of the claims as the claims are based on Defendants' status as a harvesting and hauling company and Defendants' cannot claim an exemption based on the status of its customers.

[9] Defendants claim that an inquiry "requiring particularized evidence from each class member as to the specific hours worked in each workweek" will be required. ECF No. 51 at 15. The hours worked are in Defendants' payroll system and the inquiry is straightforward—the wages must be recalculated at the correct hourly rate with overtime included, and then the wages paid would be subtracted. This requires no individualized inquiries at all—it is just columns in a spreadsheet and could be performed by a Federal Rule of Evidence 2004 summary witness.

James M. Knoepp
Dawson Morton, LLC
1612 Crestwood Drive
Columbia, SC 29205
Telephone: 828-379-3169
E-mail: jim@dawsonmorton.com

/s/ Dawson Morton
Dawson Morton
Dawson Morton, LLC
1808 Sixth Street
Berkeley, CA 94710
Telephone: 404-590-1295
E-mail: dawson@dawsonmorton.com

Attorneys for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date I filed the foregoing via CM/ECF which will automatically send an email to the following attorneys for the Defendants who have entered an appearance in this matter:

Rebecca Hause-Schultz
621 Capital Mall, Suite 2400
Sacramento, CA 95814
rhause-schultz@fisherphillips.com

Vance O. Knapp
1125 17th Street, Suite 2400
Denver, CO 80202
vknapp@fisherphillips.com

Monica Simmons
Two Logal Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
msimmons@fisherphillips.com

*/s/ James M. Knoepp*
James M. Knoepp

this 20th day of March, 2026.