IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-00847-CNS-NRN

JAIME ALBERTO DELGADO-BOJORQUEZ,
OSCAR JOVANNY DIAZ-RAMIREZ,
JOSE ANIEL LOPEZ-VALDEZ, and
REY DAVID AVIÑA-COTO, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

KB CUSTOM AG SERVICES, LLC, and
KYLE BEAUCHAMP,

Defendants.

---

**ORDER**

---

Before the Court are Plaintiffs' fully briefed motions to certify a collective action and a Rule 23(b)(3) class action. *See, e.g.,* ECF No. 37; ECF No. 39. The Court GRANTS IN PART and DENIES IN PART Plaintiffs' collective certification motion. ECF No. 37. The motion is denied to the extent that Plaintiffs seek approval and issuance of their notice. The Court GRANTS Plaintiffs' class certification motion. ECF No. 39. In doing so, the Court presumes familiarity with this case's factual and procedural background, as well as the legal standards governing the Court's analyses. *See, e.g.,* 29 U.S.C. § 216(b); Fed. R. Civ. P. 23.

# I. DISCUSSION

## A. Collective Action

Defendants challenge Plaintiffs' motion to certify a collective action on two primary bases: (1) that Plaintiffs have only put forward "conclusory allegations" that fail to meet their certification burden, *see* ECF No. 50 at 7; and (2) Plaintiffs are not similarly situated to other potential collective members because they are subject to exemptions under the Motor Carrier Act, *see id.* at 9. Defendants advance separate challenges to the collective's scope and the breadth of Plaintiffs' proposed notice. *See id.* at 11. The Court addresses and rejects these arguments in turn.

*First*, as to whether Plaintiffs have met their certification burden, Defendant fails to persuade that Plaintiffs rely on conclusory allegations. As a preliminary matter, even if some declarations contain hearsay statements, which Defendants argue is improper, this is not persuasive. At this preliminary stage in the Court's *ad hoc* analysis, the Court analyzes whether Plaintiffs have put forth "substantial allegations" as to whether the putative plaintiffs are "similarly situated." *See Wilfong v. TTEC Servs. Corp.*, No. 1:24–cv–01076–CNS–KAS, 2025 WL 580474, at *2 (D. Colo. Feb. 21, 2025). It does not defeat Plaintiffs' request for collective certification simply because some of these declarations contain hearsay statements—which the Court assumes in order to address Defendants' arguments—particularly where they are overwhelmingly based on declarants' personal knowledge and experience, rather than attenuated assumptions. *See, e.g.,* ECF No. 52 at 3; *Green v. Perry's Restaurants Ltd*, No. 21–cv–0023–WJM–NRN, 2022 WL 16744795, at *3 (D. Colo. Nov. 7, 2022); *Sharp v. CGG Land (U.S.) Inc.*, No. 14–cv–0614–CVE–

TLW, 2015 WL 222486, at *2 n.4 (N.D. Okla. Jan. 14, 2015) (rejecting objection to plaintiff's affidavit on hearsay grounds because "at the first stage a plaintiff must provide 'substantial allegations,' not evidence, that the potential [collective] members are similarly situated" (citation modified)); ECF No. 37-5 (providing "checkstubs" in support of personal experience regarding overtime pay and how other putative collective members were likewise denied overtime pay); ECF No. 37-6 at 3 ("I *know* that the other drivers *also* did not receive overtime pay for hours above forty in a week because we talked about the payments among ourselves" (emphases added)).

Turning to the substance of Plaintiffs' allegations and their supporting affidavits, they do much more than advance "conclusory allegations." *See Peterson v. Nelnet Diversified Sols., LLC*, No. 17–cv–01064–NYW, 2018 WL 9662030, at *3 (D. Colo. Feb. 2, 2018) ("The court may rely on the allegations of the complaint and any supporting affidavits filed by the plaintiff." (citation modified)). Turn to the complaint: it alleges that Plaintiffs were employed as truck drivers who worked for Defendants pursuant to Defendants' H-2A visas, *see, e.g.,* ECF No. 2–3, were subject to uniform policies and employment terms, including but not limited to the requirement to maintain a communication app, such as WhatsApp, *id.* at 8, and international driver's licenses, *id.* at 13. Recall also declarations, such as the one submitted by Plaintiff Diaz-Ramirez, that declare other drivers did not receive overtime pay, *see* ECF No. 37-6 at 3, underscoring that Plaintiffs and putative collective members were subject to a common scheme or policy to be denied overtime pay, *see* ECF No. 37 at 6. *Cf. Quint v. Vail Resorts, Inc.*, No. 20–cv–03569–DDD–GPG, 2022 WL 2753637, at *6 (D. Colo. Feb. 21, 2022), *report and*

*recommendation adopted*, No. 1:20–cv–03569–DDD–GPG, 2022 WL 2756948 (D. Colo. June 23, 2022) (denying motion where plaintiffs had "not established or alleged *anything* that would *indicate* there is a single decision, policy, or plan across all the resorts owned" by the defendant (emphasis added)).

Accordingly, reading the complaint's allegations and supporting declarations in their entirety, the Court agrees with Plaintiffs that they have met their step one, *similarly situated* burden. *See, e.g., Wilfong*, 2025 WL 580474, at *4 (concluding plaintiffs met *similarly situated* burden where they provided declarations showing they "regularly worked more than 40 hours per week"). They have done much more than offer "pure speculation," *Dunkel v. Warrior Energy Servs., Inc*., 304 F.R.D. 193, 199 (W.D. Pa. 2014), as to the policies to which they were subjected, including Defendants' failure to pay them overtime. *See also Sharp*, , 2015 WL 222486, at *3; *Thiessen v. Gen. Elec. Cap. Corp*., 267 F.3d 1095, 1102 (10th Cir. 2001) ("A court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (citation modified)); *Kalantari v. Chenega Glob. Prot*., LLC, No. 1:25–cv–00961–CNS–NRN, 2026 WL 863976, at *7 (D. Colo. Mar. 30, 2026) ("Plaintiffs' allegations and evidence are sufficient to establish that there may be other similarly-situated putative collective action plaintiffs," which are enough to authorize notice to the putative . . . members of Plaintiffs' collective action." (citation modified)); *id.* (granting collective certification request where plaintiffs "submitted evidence showing that they and potential collective members were subject to the same wage policies from which their federal wage claims ar[ose]" (citation modified)).

*Second*, Defendants argue that collective certification is improper, given Plaintiffs are subject to "Agricultural and Motor Carrier Act exemptions." ECF No. 50 at 9; *id.* at 10 ("Plaintiffs are also not similarly situated to all the workers they seek to represent because their work clearly falls within the scope of the FLSA's Motor Carrier Exemption."). But this question—whether Plaintiffs are subject to such an exemption—is not appropriate to address at this stage, and so the Court declines to do so. *See, e.g., Lyles v. T & Ds Lube Drs. LLC*, No. 2:24–cv–00728–SMD–KRS, 2025 WL 1736807, at *7 (D.N.M. June 23, 2025) ("[W]hether an employer legally exempted their workers from the FLSA is a merits-based question and cannot be addressed at this stage." (citation modified)); *Guarriello v. Asnani*, 517 F. Supp. 3d 1164, 1173 (D.N.M. 2021) ("Defendants may offer fact-based defenses, but these arguments are irrelevant to the question of collective treatment to the extent they go directly to the merits of Plaintiffs' claims."). Of course, as these cases demonstrate, Defendants are free to raise this issue again at subsequent stages of litigation, and the Court expresses no opinion, or makes any factual finding, as to whether Plaintiffs or any other collective member is covered by such an exemption. *See id.*; *Porter v. T.J. Crowder & Sons, LLC*, No. 1:22–cv–00808–STV, 2024 WL 2111571, at *2 (D. Colo. May 10, 2024) (considering applicability of agricultural exemption following trial).

Having established that Plaintiffs have met their *similarly situated* burden and analyzed Defendants' arguments that attend the applicability of an FLSA exemption, the Court turns to whether Plaintiffs' collective "should be limited to potential plaintiffs who worked at the same worksites as Plaintiffs and Opt-In Plaintiff Tapia-Vera." ECF No. 50 at 10. The Court declines to impose that limitation. It is proper at this preliminary stage to

certify Plaintiffs' collective as proposed. Especially where, as Plaintiffs note in reply, *see* ECF No. 52 at 6, the proposed collective is not likely as broad as Defendants contend. Regardless, even assuming that Plaintiffs have proposed a "nationwide" collective, other courts have permitted such collective actions and declined to impose geographic limitations at this stage. *See, e.g., Smith v. Pizza Hut, Inc.*, No. 09–cv–01632–CMA–BNB, 2012 WL 1414325, at *6 (D. Colo. Apr. 21, 2012) ("The fact that delivery drivers from every region have not yet opted into this action does not mean that a nationwide class cannot exist."); *In re Bank of Am. Wage & Hour Emp. Litig.*, 286 F.R.D. 572, 586 (D. Kan. 2012*); Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 66 (E.D. Pa. 2009). The Court finds their reasoning persuasive, and likewise certifies Plaintiffs' collective as proposed.

Finally, Defendants contend that Plaintiff's notice is overbroad. *See* ECF No. 50 at 11. Plaintiffs disagree, arguing that their notice is proper in both content and scope. *See* ECF No. 37 at 7; ECF No. 52 at 7. Given that the Court has now certified Plaintiffs' collective, and with the benefit of the Court's analysis, the parties are ordered to confer about Plaintiffs' proposed notice. The parties shall file a status report within 14 days of this order detailing their conferral efforts and the extent to which they have reached any agreement as to the terms of Plaintiffs' proposed notice. Plaintiffs shall file as part of this status update a revised proposed notice. Should any objections remain, the parties shall also file position papers concurrent with their status report detailing the nature of their remaining disputes and any arguments regarding the same. Such position papers shall not exceed five pages. To the extent that Plaintiffs seek additional information from Defendants to "facilitate notice," ECF No. 37 at 9, this information shall be discussed—

and potentially even produced—in the course of the parties' conferral efforts, with each mindful that courts in this judicial district "routinely order defendants to produce this basic information to facilitate the notice process." *Wilfong*, 2025 WL 580474, at *7 (collecting cases); *Kalantari*, 2026 WL 863976, at *7 ("The parties] should have an opportunity to meet and confer . . . regarding notice. Such a meeting benefits both the parties and the Court." (citation modified)).

**B. Class Action**

The parties dispute whether Plaintiffs have met their Rule 23(a) and Rule 23(b)(3) class certification burdens. Considering them in turn, Plaintiffs have met their certification burdens. *See also White v. Gen. Motors LLC*, No. 1:21–cv–00410–CNS–MEH, 2023 WL 3278460, at *2–3 (D. Colo. May 5, 2023) (explaining Rule 23(a) requirements and that plaintiffs bear the burden of satisfying them).

**1. Rule 23(a)**

***Numerosity.*** The Court agrees with Plaintiffs that they have met their numerosity burden. *See* ECF No. 39 at 8. Plaintiffs contend, with evidentiary support, that the proposed class—which is clearly defined—is composed of at least "300 individual H-2A temporary foreign workers." *Id.* Accordingly, Plaintiffs have put forth evidence showing that joinder of such employees would be impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 247 (W.D. Ark. 2010). Notably, Defendants do not seriously challenge Plaintiffs' numerosity evidence, *see generally* ECF No. 51—if anything, Defendants appear to concede that Plaintiffs have met their *numerosity* burden—but regardless the Court's independent analysis of Plaintiffs'

evidentiary submissions confirm that Plaintiffs have met their Rule 23(a)(1) *numerosity* burden. *See, e.g.* ECF No. 51 at 8 (arguing that Plaintiffs have not met *commonality* burden where questions would vary "across a class of hundreds"); *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) ("Plaintiffs must offer some evidence of established, ascertainable numbers constituting the class." (citation modified) (emphasis added)); *D.B.U. v. Trump*, 349 F.R.D. 228, 236 (D. Colo. 2025) (determining numerosity conclusion was bolstered by respondents' "failure to meaningfully brief this issue, essentially conceding it" (citation modified).

For substantially the same reason, the Court agrees with Plaintiffs that the proposed class is ascertainable, *see* ECF No. 39 at 7, especially given that Defendants have already identified potential class members, *see* ECF No. 39-8 at 4. Further, objective criteria, such as Defendants' employment and payroll records, clearly exist from which the Court may ascertain potential class members. *See also In re HomeAdvisor, Inc. Litig.*, 345 F.R.D. 208, 220–21 (D. Colo. 2024) ("An identifiable class exists if its members can be ascertained by reference to objective criteria. If the class members are identifiable using a defendant's records, then the class is ascertainable." (citation modified)); *Rider trustee of Cherry Rider Fam. Tr. v. OXY USA, Inc*, 175 F.4th 1214, 1224 (10th Cir. 2026) (explaining *ascertainability* requirement met where class definition is "defined clearly" and "defined objectively and [not] based on subjective criteria" (citation modified)); ECF No. 39 at 7 (arguing that the proposed class "consists of individuals employed as tractor-trailer truck drivers pursuant to H-2A visas obtained by the Defendants between 2022 and the present").

***Commonality.*** Plaintiffs argue they have met their *commonality* burden because there are "questions of law and fact common to the class." ECF No. 39 at 9. Defendants challenge this, arguing that common questions "do not abound" and that Plaintiffs' claims demand individualized inquiries that defeat commonality. ECF No. 51 at 7. The Court agrees with Plaintiffs that they have met their *commonality* burden.

Rule 23(a)(2) is disjunctive: a plaintiff may satisfy its commonality requirement if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("In determining whether the . . . commonality requirement ha[s] been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient." (citation modified)). In determining whether a plaintiff has satisfied Rule 23(a)(2)'s commonality requirement, courts ask whether the class claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (quotations omitted). "A finding of commonality requires only a single question of law or fact common to the entire class." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (citation modified); *see also Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (citation modified)). "A common contention need not

be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv*., 800 F.3d 1047, 1053 (9th Cir. 2015) (citation modified).

Plaintiffs have identified common questions that will "resolve an issue that is central" to Plaintiffs' claims "in one stroke," *Wal-Mart*, 564 U.S. at 350: Whether Defendants' wage payment policies and practices were improper. Specifically, whether in 2022, 2023, and 2025 Defendants "paid the Plaintiffs and other class members an illegally low agricultural adverse effect wage rate rather than the higher wage rate that applies to heavy and tractor-trailer truck drivers," ECF No. 39 at 10, as well as whether from 2022 through 2025 Defendants "were legally obligated to pay the Plaintiffs and other class members overtime wages when they worked more than forty (40) hours in a workweek and whether this contractual obligation was breached," *id.* These are paradigmatic wage and hour issues—which, as Plaintiffs observe, are animated by common questions and common proof that will generate answers apt to drive resolution of the case—that routinely warrant certification and that certainly show that Plaintiffs have met their *commonality* burden. *See, e.g.,* ECF No. 39 at 10; *Kalantari*, 2026 WL 863976, at *2 (certifying class where plaintiffs "identified several common questions of law and fact . . . including whether [the defendant] had a 'a policy or practice of failing to properly compensate hourly employees for work they performed during their meal breaks' . . . whether [the defendant] split work weeks to avoid paying overtime, and relatedly whether [the defendant] properly compensated putative class and sub-class members with their overtime" (citation modified)); *Wal-Mart*, 564 U.S. at 350.

Defendants' argument to the contrary is that Plaintiffs' claims demand "fact specific inquir[es]" into individual class members' circumstances. ECF No. 51 at 7. The Court disagrees. Indeed, Defendants argue that the Court, at a minimum, would need to determine whether they paid "the contractually promised rate for all hours he or she worked while employed." *Id.* at 8. *See also id.* (arguing that the question of whether "Defendant engaged in wrongdoing by denying [Plaintiffs] overtime" actually defeats *commonality*). That's precisely the point and demonstrates that there is at least one common question animating Plaintiffs' class claims. *See Kalantari*, 2026 WL 863976, at *2 n.4 ("And in any event, this argument proves the point, essentially conceding that Plaintiffs were subject to the same overtime policies . . . ." (citation modified)).

Even if the Court agrees with Defendants that class members may be subject to differing job orders, *see* ECF No. 51 at 8, these job orders are virtually identical in terms of their wage provisions. *See* ECF No. 53 at 3; ECF No. 39-1 at 5; ECF No. 39-2 at 5; ECF No. 39-3 at 5; ECF No. 39-4 at 5. They do not materially differ—indeed, they are essentially identical—in the "Conditions of Employment and Assurances for H-2A Agricultural Clearance Orders" they set forth. *See, e.g.,* ECF No. 39-1 at 4. Thus, this case is unlike *Wallace B. Roderick*, where plaintiffs failed to meet their *commonality* burden because leases contained variations in their language, and where the district court did not examine the language of an additional 430 lease agreements. *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725. F.3d 1213, 1219 (10th Cir. 2013) ("To be sure, the district court considered many of [the] arguments regarding lease language variations. But from what we are told, there are roughly 430 leases which have

yet to be examined by the [plaintiff] or the district court."). At bottom, upon review of the relevant contracts and job orders, the Court agrees with Plaintiffs that they are "uniform and based on a standard set of laws and regulations." ECF No. 53 at 3; *Kalantari*, 2026 WL 863976, at *2 n.5 ("Thus, a successful plaintiff must identify some unifying thread among the members' claims that warrants class treatment—not issues identical as to each member." (citation modified)); *Perez-Benites*, 267 F.R.D. at 247; *McAlister v. LGI Homes Corp., LLC*, No. 23–cv–03088–NYW–TPO, 2024 WL 5431464, at *6 (D. Colo. Dec. 6, 2024) (concluding plaintiffs met *commonality* burden where even though the court "may eventually have to entertain evidence distinct to each plaintiff," underlying offer letters "used the same language and pose[d] the same legal question").

The Court likewise rejects Defendants' argument that the Court would need to determine whether each class member was paid an "unlawful wage rate." ECF No. 51 at 9. Plaintiffs acknowledge the relevant agreements contain slight variations regarding the wage rate. *See* ECF No. 53 at 3 ("The hourly wage paid varied slightly by year."). But Defendants' argument—and any variations as to the *wage rate* year by year—is fundamentally an argument that class members may have individualized *damages*, which is insufficient to defeat *commonality. See, e.g., Kalantari*, 2026 WL 863976, at *6 (colleting cases); *Sibley v. Sprint Nextel Corp*., 315 F.R.D. 642, 664 (D. Kan. 2016). And in any event, the question as to whether Defendants paid Plaintiffs the correct hourly wage based on the work performed and any overtime wages are common questions that demonstrate Plaintiffs have met their *commonality* burden. *See* ECF No. 53 at 3–5; *id.* at 4 n.3; *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 377 (D.S.C. 2015); *Mencia*

*v. Allred*, 808 F.3d 463, 473 (10th Cir. 2015) ("In simple back-wages claims like this one, all a fact-finder needs to calculate damages is the hourly wage, the number of hours worked, and the amount already paid. Here the minimum hourly wage is set by law: the H–2A wage for ranch hands.").

So too does the Court reject Defendants' argument at the *certification stage* that Plaintiffs and different potential class members may be subject to agricultural or Motor Carrier exemptions. *See id.* at 10. This is a fundamentally a question as to whether an affirmative defense applies to Plaintiffs' claims, *see Aragon v. Clear Water Prods. LLC*, No. 15–cv–02821–PAB–STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018), and Defendants fail to persuade that the applicability of an affirmative defense as to certain class members' claims defeats commonality, *see Cline v. Sunoco, Inc. (R&M)*, 159 F.4th 1171, 1193 (10th Cir. 2025). Especially where, as a general matter, the Court must "scrutinize the parties' briefing for common contentions, rather than for noncommon ones," and Defendants' arguments against *commonality* amount to an improper invitation to scrutinize the record for noncommon contentions. *Kalantari,* 2026 WL 863976, at *2 (citing *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1193 (10th Cir. 2023)). Regardless, Plaintiffs' observation that Defendants' "entitlement to the agricultural exemption," as well as the applicability of the Motor Carrier exemption, are premised on factual issues common to the class—i.e., whether the "hauling of silage on public roads is primary agriculture"—bolsters the Court's conclusion that Plaintiffs have met their *commonality* burden. ECF No. 53 at 5. *See also id.* at 6.

Finally, the Court turns to Defendants' argument that Plaintiffs' quantum meruit claims turn on "individualized inquires." ECF No. 51 at 12. The Court rejects this argument. As Plaintiffs observe, the inquires underlying this claim proceed from the same premise as their wage complaints, meaning that the quantum meruit claims are animated by common questions and common proof capable of resolving Plaintiffs' claims on a class-wide basis. *See, e.g.,* ECF No. 53 at 3. For instance, the issue as to whether Defendants received benefits at the expense of Plaintiffs and their labor by failing to properly compensate Plaintiffs is a common issue that underpins Plaintiffs' quantum meruit claims. Further, the Tenth Circuit itself, and numerous district courts, have approved certification of quantum meruit and unjust enrichment classes. *See Menocal*, 882 F.3d at 924 (concluding unjust enrichment class satisfied *commonality* requirement because at least one "common question" could be answered as to the class); *Mahon v. Chicago Title Ins. Co*., 296 F.R.D. 63, 78 (D. Conn. 2013) (certifying unjust enrichment claim where "facts and law supporting the claim [were] the same regardless of the individualized circumstances); *Rodriquez v. Hermes Landscaping, Inc*., Civ. No. 17–2142, 2018 WL 4257712, at *4 (D. Kan. Sept. 5, 2018) (certifying class that included quantum meruit claims because "whether defendant violated state and federal laws by failing to pay its workers as required by law is an overarching legal question."); *Marquez v. Midwest Div. MMC, LLC*, No. 19–cv–2362–DDC–ADM, 2022 WL 4355298, at *5 (D. Kan. Sept. 20, 2022) (certifying class that included quantum meruit claim where the "alleged non-payment for time worked is a common issue for all members of the putative

class”). This authority bolsters the Court’s conclusion that Defendants err in arguing that Plaintiffs have not met their *commonality* burden as to the quantum meruit claims.

In sum, Plaintiffs have met their *commonality* burden, and Defendants fail to persuade otherwise.

***Typicality.*** Plaintiffs argue that they have met their *typicality* burden. *See* ECF No. 39 at 11. Defendants do not meaningfully challenge this argument, instead arguing that Plaintiffs’ claims are not typical of the class in their *adequacy* analysis. *See* ECF No. 51 at 14. Putting aside the cursory nature of this argument, which is tantamount to a concession that Plaintiffs have met their *typicality* burden, the Court agrees with Plaintiffs that they have met their typicality burden.

Under Rule 23(a)(3), “the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class.” Rule 23(a)’s typicality requirement “do[es] not require that every member of the class share a fact situation identical to that of the named plaintiff.” *Colorado Cross Disability*, 765 F.3d at 1216 (citation modified). “[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory.” *Menocal*, 882 F.3d at 914 (citation modified).

Here, Plaintiffs’ claims are typical of claims for the proposed class. As they observe, Plaintiffs were employed in the same positions, pursuant to the same contracts as other H-2A truck drivers, *see* ECF No. 39 at 11, and their claims arise from Defendants’ uniform wage policies and alleged failure to adequately pay Plaintiffs and class members the wages to which they argue they were entitled, *see id.* at 12. These facts demonstrate

that Plaintiffs have met their *typicality* burden. *See, e.g., Kalantari*, 2026 WL 863976, at *3 ("Plaintiffs and putative class members were subject to the same policies . . . from which their claims arise. Thus, they have met their *typicality* burden." (citation modified)); *McCormick v. HRM Res., LLC*, No. 1:24–cv–00823–CNS–CYC, 2025 WL 2958834, at *4 (D. Colo. Oct. 17, 2025) ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." (citation modified)).

***Adequacy.*** The parties dispute whether Plaintiffs have met their *adequacy* burden. *Compare* ECF No. 39 at 12, *with* ECF No. 51 at 13. The Court agrees with Plaintiffs that they have met this burden.

Rule 23(a)(4) requires that a named plaintiff "will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hill v. Aspen Contracting, Inc.*, No. 1:20–cv–00149–SWS–MLC, 2021 WL 2662296, at *5 (D.N.M. Feb. 22, 2021) (citation modified); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel." (citation modified)).

*First*, the Court agrees with Plaintiffs that they have no conflict of interest with any other class member. *See* ECF No. 39 at 12. Indeed, Plaintiffs' interests and the interests of potential class members are the same, insofar as Plaintiffs and potential class

members seek recovery of wages they are owed under the same theories of liability. *See id. See also Kalantari*, 2026 WL 863976, at *3 ("Plaintiffs assert the same theories of liability arising from Defendant's conduct as all other class members. This demonstrates that no conflicts exist such that Plaintiffs' representation would be inadequate under Rule 23(a)(4)." (citation modified)); *D.B.U.*, 349 F.R.D. at 239 (concluding petitioners met *adequacy* burden where they did "not seek any unique relief contrary to the relief they seek on behalf of the class" and therefore that "their interest in th[e] litigation [was] aligned with class members' interests"). Nor does the Court discern any conflict between class counsel and the class. *See, e.g., id.* Defendants' argument that Plaintiffs are inadequate class representatives because they are "terminated" employees who seek to represent the class, which include current employees, fails to persuade. ECF No. 51 at 13; *White*, 2023 WL 3278460, at *12 (rejecting argument that "factual differences exist" between plaintiffs and class members and that "this argument fails to persuade that an impermissible conflict of interest exists between [the plaintiff] and other class member"); *D.B.U.*, 349 F.R.D. at 239; *Kalantari*, 2026 WL 863976, at *3 ("[D]espite Defendant's effort to generate factual differences . . . neither Plaintiffs nor their counsel have any conflicts of interest with potential class members."). Especially where Defendants' argument is fundamentally speculative. *See* ECF No. 51 at 13 (arguing it is "entirely plausible, and in fact likely," that class members are differently situated from Plaintiffs).

*Second*, Plaintiffs and class counsel will vigorously prosecute this case on behalf of the class. As Plaintiffs observe, they initiated this case and have prosecuted it vigorously to date. Moreover, review of the record demonstrates that class counsel are

obviously experienced in the realm of employment law, and specifically related to claims of H-2 visa holders. *See, e.g.,* ECF No. 39-8 at 2–4. Thus, as to Plaintiffs' and class counsel's past and future prosecution of this case, Plaintiffs have met their *adequacy* burden. *See, e.g,. Kalantari*, 2026 WL 863976, at *4 ("[I]t's clear that Plaintiffs and their counsel will vigorously prosecute this action on behalf of the class. Counsel for Plaintiffs and the class have litigated numerous class actions and are amply qualified to serve as class counsel in this case. Further, counsel have litigated this case for over one year, up to and including now, the certification stage, underscoring their commitment to this case's prosecution." (citation modified)); *White*, 2023 WL 3278460, at *12 (concluding plaintiffs met *adequacy* burden where counsel was "qualified to serve as class counsel, and [also] provided thorough and competent briefing on the issue of class certification").

Fundamentally, as in *Kalantari*, " there is no indication that counsel have conflicts of interest with any class members or that counsel will not vigorously prosecute this action on behalf of the class." 2026 WL 863976, at *4 (citation modified). Thus, Plaintiffs have met their *adequacy* burden. And for the same reasons that Plaintiffs have met their Rule 23(a)(4) burden, so too have they shown that appointment of class counsel is proper under Rule 23(g). *See, e.g., White*, 2023 WL 3278460, at *12 (citing Rule 23(g)(1)(A)(i)–(iv) and concluding that for the same reasons Plaintiffs met *adequacy* burden so too was certification "appropriate" under Rule 23(g)).

* * *

For the reasons set forth above, Plaintiffs have met their burdens under Rule 23(a) by a preponderance of the evidence. Therefore, the Court proceeds in its analysis of

Plaintiffs' certification motion under Rule 23(b)(3). *See, e.g., Kalantari*, 2026 WL 863976, at *4.

2. **Rule 23(b)(3)**

Rule 23(b)(3) imposes *superiority* and *predominance* requirements. The Court agrees with Plaintiffs that they have met both. *See, e.g.,* ECF No. 14.

***Superiority.*** Plaintiffs argue that they have met their *superiority* burden, ECF No. 39 at 15, which Defendants do not meaningfully contest, *see generally* ECF No. 51. Nonetheless, the Court agrees with Plaintiffs that they have met their *superiority* burden.

To satisfy Rule 23(b)(3), a plaintiff must show that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A Rule 23(b)(3) class action is superior when it allows for the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *White*, 2023 WL 3278460, at *16 (citation modified)); *see also id.* (setting forth factors to be considered in *superiority* analysis).

After considering the relevant factors, *see id.*, the Court concludes that Plaintiffs have met their *superiority* burden. Permitting litigation of Plaintiffs' claims on a class basis is superior to litigating them on an individual basis. *See Kalantari*, 2026 WL 863976, at *4; *Amchem Products*, 521 U.S. at 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (citation modified)). Given the nature of Plaintiffs' wage and hour claims, "concentrating the litigation is desirable," *White*, 2023 WL 3278460, at *16, and the Court discerns few

difficulties in managing a class action, *see* Fed. R. Civ. P. 23(b)(3). *See also McCormick*, 2025 WL 2958834, at *12. This is not, for instance, a case where Plaintiffs seek certification of "what are essentially personal injury cases, where class members may have individualized interests in prosecuting their own, separate actions." *White*, 2023 WL 3278460, at *16 (citing *In re Pac. Fertility Ctr. Litig.*, No. 18–cv–01586–JSC, 2020 WL 3432689, at *7 (N.D. Cal. June 23, 2020)). Accordingly, Plaintiffs have satisfied their Rule 23(b)(3) superiority burden. *See also McCormick*, 2025 WL 2958834, at *12; *Menocal*, 882 F.3d at 915; *Kalantari*, 2026 WL 863976, at *4.

***Predominance.*** The parties dispute whether Plaintiffs have met their *predominance* burden. *Compare* ECF No. 39 at 14, *with* ECF No. 14. The Court agrees with Plaintiffs that they have met their burden.

Under Rule 23(b)(3), a plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Although similar to its commonality counterpart, a court's predominance inquiry under Rule 23(b)(3) is "even more demanding." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citation modified). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products*, 521 U.S. at 623 (citation modified). In conducting this inquiry, courts must give "careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see also Naylor Farms*, 923 F.3d at 789 ("To satisfy Rule 23(b)(3), a

plaintiff must show that common questions subject to generalized, classwide proof predominate over individual questions." (citation omitted)).

Courts, engaging in their *predominance* inquiries, take a two-step approach. *See, e.g., CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). First, courts must "characterize the issues in the case as common or not." *Id*. Then, courts "weigh which issues predominate." *Id*.; *see also* 2 Newberg and Rubenstein on Class Actions § 4:50 (6th ed.) ("The predominance analysis logically entails two steps—the characterization step and the weighing step."). "Once the issues have been characterized, courts then loosely compare the issues subject to common proof against the issues subject solely to individualized proof to assess whether the common issues predominate." *Id*.; *see also Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 168 (D.N.M. 2016) (stating that courts "compar[e] the total time [they] will most likely spend on common versus individual questions." (citation modified)). This inquiry begins with "the elements of the underlying cause of action." *CGC Holding*, 773 F.3d at 1088 (citation modified)); *cf. Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (citation modified)). Where a plaintiff demonstrates that, after engaging in this two-step approach, common, "aggregation-enabling" issues in the case "are more prevalent or more important than individual issues," then Rule 23(b)(3)'s predominance requirement is satisfied. *Tyson Foods*, 577 U.S. at 453 (citation modified).

*First*, and as explained in the Court's *commonality* analysis, there are common issues in this case. *See CGC Holding*, 773 F.3d at 1087. As Plaintiffs observe, there is the fundamental, common question as to whether Defendants' pay practices were legal, and thus denied Plaintiffs and class members they wages the claim that they are owed. *See* ECF No. 39 at 14. And elements of all of Plaintiffs' claims are "susceptible to generalized proof" and certainly predominate "over [any] that are not." *CGC Holding*, 773 F.3d at 1087 (citation modified); *see also Tyson Foods*, 577 U.S. at 453; *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (setting forth elements for breach of contract claim); *CadleRock Joint Venture LP v. Esperanza Architecture & Consulting, Inc.*, 500 P.3d 402, 406 (Colo. App. 2021) (setting forth elements for quantum meruit claim).

As for the breach of contract claim, this claim is certainly susceptible to generalized proof, given that any contract—including the job orders—between class members and Defendants can be easily identified, the Court can easily determine whether Plaintiffs were employed, and thus performing their work, and whether Defendants breached the terms of class members' employment agreements by failing to pay them any owed wages and overtime based on the work they performed. *See Diodosio*, 841 P.2d at 1058; *CGC Holding*, 773 F.3d at 1087 (stating that predominance's "characterization task" requires courts to consider which elements of claim "are susceptible to generalized proof" and whether they "are so susceptible to predominate over those that are not" (citation modified)). As for the quantum meruit claim, whether Defendant was given the benefit of Plaintiffs' work and inequitably retained that benefit based on possibly illegal pay practices is likewise susceptible to common proof, which the Court can discern through

employment records and records of wage payments that Plaintiffs and class members did—or did not—receive. At bottom, the Court agrees with Plaintiffs that the "legality of Defendants' pay practices" is the "dominant issue" as to the breach of contract and quantum meruit claims. ECF No. 39 at 14. *See also Waltrip v. TransWood Logistics, Inc.*, No. 1:24–cv–00672–SMD–KK, 2026 WL 540149, at *6 (D.N.M. Feb. 26, 2026) (concluding plaintiffs met *predominance* burden as to claims that included a quantum meruit claim where, among other facts, defendants "used a uniform system of compensation for their truck drivers" and plaintiffs' "shared theory of liability and comparable employment setting predominate over discrepancies in their available damages"); *Kalantari*, 2026 WL 863976, at *5 (concluding wage claims were "susceptible to generalized proof and present[ed] a common issue for *predominance* purposes [because these] claims [were] attendant to and ar[ose] from [the defendant's] wage policies and practices").

*Second*, weighing these common issues, which are subject to common proof, against any individualized issues subject "solely to individualized proof," 2 Newberg and Rubenstein on Class Actions § 4:50 (6th ed.), these common issues outweigh any individualized issues that this case may later present. The Court agrees with Plaintiffs that the individualized inquiries the Court may be called to conduct attend class members' *damages*, and their individualized nature does not defeat *predominance* or block certification of a Rule 23(b)(3) class. *See, e.g., Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 676 (D.N.M. 2020) ("The number of hours individual class members worked is a question for damages, not liability . . . . courts routinely have held that damages

calculations alone cannot defeat certification" (citation modified)); *Menocal*, 725 F.3d at 1220 ("The presence of individualized damages issues does not defeat the predominance of questions common to the [ ] class.").

Defendants resist this conclusion on the grounds that this case "requires individualized inquiries into the terms and conditions of each class members' Job Orders and the job duties they performed on a week-by-week basis." ECF No. 51 at 14. But, as explained above, the job orders are not materially different for purposes of the Court's *liability* or *damages* analyses. And as for the argument that Plaintiffs have not put forward a damages model to determine damages for the class, *id.*, this case is unlike *Comcast*, cited by Defendants, where the plaintiffs in an *antitrust* case failed to establish that damages were "susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Here, damages are susceptible to measurement on a class-wide basis, given that the Court can discern any class members' damages based on the hours of work performed and what they are owed based on those hours. *See* ECF No. 39 at 15. Simply stated—and to quote Defendants themselves— Plaintiffs have "identif[ed] a measurement method" for calculating class members' damages. ECF No. 51 at 15. And as for the argument that there would need to be individualized inquiries into whether a class member fell under an FLSA exemption, the Court rejects that argument here—consistent with its analysis above—given that "aggregation-enabling" issues "are more prevalent [and] more important than [the] individual issues" offered by Defendant. *Tyson Foods*, 577 U.S. at 453 (citation modified).

At bottom, after giving careful scrutiny to the common issues in this case, which are susceptible to common proof, against the individualized issues identified by Defendant, *see Tyson Foods*, 577 U.S. at 453, the class is "sufficiently cohesive" to warrant "adjudication by representation," *Amchem Products*, 521 U.S. at 623 (citation modified). Accordingly, Plaintiffs have met their Rule 23(b)(3) *predominance* burden.

* * *

Certification of Plaintiffs' class is proper. They have satisfied Rule 23(a) and Rule 23(b)(3)'s requirements by a preponderance of the evidence. Of course, certification of Plaintiffs' class is not dispositive of their claims on the merits. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *see also Shook*, 386 F.3d at 971. After conducting its "rigorous analysis" of the class certification requirements, the Court answers this question affirmatively. *See Wal-Mart*, 564 U.S. at 351.

## II. CONCLUSION

Consistent with the above analysis, Plaintiffs' collective certification motion, ECF No. 37, is GRANTED IN PART and DENIED IN PART, and Plaintiffs' class certification motion, ECF No. 39, is GRANTED. Pursuant to Federal Rule of Civil Procedure 23(b), Plaintiffs' class as proposed in the certification motion is certified under Rule 23(b)(3). Jaime Alberto Delgado-Bojorquez, Oscar Jovanny Diaz-Ramirez, Jose Aniel Lopez-Valdez, and Rey David Aviña-Coto are named representatives of the class. Pursuant to

Federal Rule of Civil Procedure 23(g), James Knoepp And Dawson Morton of Dawson Morton, LLC are appointed as class counsel.

The parties are ORDERED to confer and file a status report within 14 days of this order detailing their conferral efforts and the extent to which they have reached any agreement as to the terms of Plaintiffs' proposed notice. Plaintiffs shall file as part of this status update a revised proposed notice. Should any objections remain, the parties shall also file position papers concurrent with their status report detailing the nature of their remaining disputes and any arguments regarding the same. Such position papers shall not exceed five pages.

DATED this 14th day of September 2026.

BY THE COURT:



Charlotte N. Sweeney
United States District Judge