**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00847-CNS-NRN

JAIME ALBERTO DELGADO-BOJORQUEZ,
OSCAR JOVANNY DIAZ-RAMIREZ,
JOSE ANIEL LOPEZ-VALDEZ, and
REY DAVID AVIÑA-COTO,
on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

KB CUSTOM AG SERVICES, LLC, and
KYLE BEAUCHAMP,

Defendants.

---

**ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

---

IT IS HEREBY STIPULATED AND AGREED by the parties, through their respective counsel, subject to the approval of the Court, that the following Stipulated Order Regarding the Discovery of Electronically Stored Information (the "Stipulated ESI Protocol" or the "Protocol") be entered by this Court:

## I. PURPOSE

This Order governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure and this District's Guidelines Addressing the Discovery of Electronically

Stored Information ("ESI Guidelines")[1] and Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information ("ESI Checklist"),[2] and any other applicable orders and rules. Nothing in this Order is intended to expand or limit the obligations of a party or non-party as otherwise required by law.

## II. DEFINITIONS

(a) "Attachment" refers to a file that is transmitted as part of a multipart email message using the MIME (Multipurpose Internet Mail Extensions) protocol. Attachments are encoded to facilitate the transmission of binary files over text-based email protocols such as SMTP. Each attachment remains logically associated with the parent email message and is retrievable as an integrated part of the email. Attachments that are subject to production must be capable of automatic association with the email itself and must be physically embedded within the email message file. This definition excludes hyperlinks or other references to externally hosted files (e.g., Google Drive, SharePoint, or cloud storage links) that require separate retrieval outside of the email system

(b) "Defendants" means KB Custom AG Services, LLC and Kyle Beauchamp, as well as any later added defendants.

(c) "Document" is synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 26 and 34 and shall include Hard-Copy Documents and ESI.

[1] http://www.cod.uscourts.gov/Portals/0/Documents/Forms/CivilForms/E-Discovery_Guidelines.pdf.
[2] http://www.cod.uscourts.gov/Portals/0/Documents/Forms/CivilForms/E-Discovery_Checklist.pdf.

(d) "Electronically stored information" or "ESI" has the same meaning as Federal Rules of Civil Procedure 26 and 34. ESI includes Documents existing in electronic form at the time of collection, including but not limited to: email messages (including all active messages and archived or otherwise stored messages), other electronic messaging platforms (such as instant messaging, chat messaging, and app-based messaging), calendar items, memoranda, letters, reports, presentations, databases, electronically stored data, spreadsheets, charts, and handwritten notes.

(e) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

(f) "Native Format" means and refers to the format of ESI in which it was generated, stored, and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

(g) "Metadata" means: (i) embedded information a native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device, or the custodian or non-custodial data source from which it was collected.

(h) "Party" refers to either Plaintiff or Defendants, and "Parties" refers to Plaintiffs and Defendants collectively.

(i) "Non-Party" or "Non-Parties" means any person, business, organization, or legal entity that is not a named plaintiff or defendant in this case.

(j) "Requesting Party" means the Party requesting the production of Documents.

(k) "Producing Party" means the Party that may be producing Documents in response to a request by the Requesting Party.

(l) "Load File(s)" means electronic files provided with a production set of documents and images used to load that production set into a receiving party's document review platform and correlate its data within that platform."

(m) "Plaintiffs" means Jaime Alberto Delgado-Bojorquez, Oscar Jovanny Diaz-Ramirez, Jose Aniel Lopez-Valdez, and Rey David Aviña-Coto, as well as any later added plaintiffs.

## III. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct.

Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any discovery demand.

Nothing in this Protocol shall be deemed to prevent a Party from seeking the Court's intervention, pursuant to the Court's Standing Order for discovery disputes, with respect to any issues that may arise regarding the application of this ESI Order to a Document request issued to a Producing Party and/or any responses or objections a

Producing Party may have with respect to any such request, if the Parties are unable to resolve any such issues, responses, or objections without the Court's assistance. Likewise, nothing in this ESI Order shall be deemed to prevent any other Party from opposing relief sought from the Court.

## IV. PRESERVATION

The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. To ensure proper ESI is preserved, the parties agree that:

(a) As part of any response to Phase II Requests for Production, the Parties will disclose in their written discovery response each of the following relevant information:

1. **Custodians**. The name and title of each custodian the Party searched for discoverable ESI, including (but not limited to) email communications.
2. **Non-custodial Data Sources**. A list of non-custodial data sources (e.g., shared drives, servers (including email servers such as Exchange), document management systems, cloud-based folders, databases, third-party data sources, etc.) the Party searched for discoverable ESI.
3. **Search Terms**. A list of the search terms that the Party applied to review and/or produce documents from each data source it identified.
4. **Date Limitations**. The date limitations, if any, the Party applied to restrict or limit its review and/or production of documents from each data source it identified, including identification of any specific search terms or custodians that date limitations restricted.

(b) The Parties will meet and confer to discuss (i) any specific search terms that are unduly broad and/or disproportional to the case, or otherwise generated an excessive number of search hits; and (ii) any data sources that any party claims are not reasonably accessible because of an undue burden or expense.

(c) The Parties shall have a continuing obligation to identify custodial and non-custodial information that may contain discoverable information, and to take reasonable and proportionate steps to preserve them.

## V. SEARCH METHODOLOGY

(a) Parties will continue meet and confer with respect to possible options for ensuring an efficient discovery process, such as the use of search terms or the possible use of technology assisted review ("TAR"), the possible use of testing and sampling, relevant date ranges, possible custodians that may have potentially discoverable information, any obstacles to accessing and producing ESI, and the timing of productions. This section governs materials that have been collected for processing and review.

(b) The Parties may employ an electronic search to locate relevant electronic documents. The Producing Party may use a reasonable electronic search of the electronic documents so long as such searches meet the standard of care promulgated in FRCP 26(g).

(c) The Parties recognize the intrinsic value of available tools to expedite review and minimize the expenses associated with eDiscovery. These tools include, but are not limited to, limiting the scope of the electronic search (through the use of search terms, cull terms, time frames, fields, document types, and custodian limitations),

predictive coding, TAR, deduplication, e-mail threading, date restrictions, and domain analyses. The Producing Party may deploy these tools and technological methodologies to speed up document review, including global de-duplication within their own productions, predictive coding, and computer assisted review. If TAR was employed, the Producing Party will provide the Requesting Party a general description of the protocol used, including a high-level description of the validation method, and the name of the TAR tool used.

(d) **Deficiency Procedure.** If the Requesting Party has good cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

1. As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some concrete evidence of a deficiency in the Producing Party's discovery process in accordance with applicable case law.

2. The Parties will consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts.

3. If a Party contends that the production of materials sought from one or more sources are outside the scope of Rule 26(b)(1), the Parties agree, if necessary, to meet and confer to attempt to resolve the issue. Nothing in this Protocol shall prevent a party from seeking the Court's intervention with respect to any such issue if the Parties are unable to resolve it themselves or from preventing any other Party from opposing any relief sought.

## VI. PRODUCTION FORMATS

The Parties agree to produce documents in the formats described below. The Parties agree not to degrade the searchability of documents as part of the document production process.

(a) **Images.** Except for documents produced in native format, the parties will produce ESI in TIFF format, and with Bates numbers applied on the bottom right. Confidentiality designations will be applied on the bottom left. Both stamps to be situated so as to not block or obliterate underlying text. For documents produced in image format, hidden content (including track changes, comments, and notes) shall be rendered to the extent reasonably practicable and subject to applicable privilege and redaction review. This requirement shall not require imaging of spreadsheets produced in native format under subsection (b) or (j).

(b) **Native Files**. The parties will produce databases, spreadsheets (*e.g.*, Excel, CSV, and other delimited text files), presentation files (*e.g.*, PowerPoint), multimedia files (*e.g.*, .avi) (including videos (such as .mpeg)), and audio files (such as .wav files) in native format where reasonably available, with the exception of native files that correspond to produced documents that have been redacted. The Parties shall include any confidentiality designation therein as well. The receiving party may request a native copy of any document not initially produced in native format and reasonable requests will not be denied.

Native files shall be produced with a slipsheet with the words "File Produced Natively" with Bates number and Confidentiality designation shall be placed to mark where the original Native file was found in the normal course.

(c) **Color Documents.** All documents will be produced in black and white, single page TIFF, unless color images are detected in which case they shall be produced in color JPG or some other format agreed to by the parties. The attachment to any email shall be produced in black and white, unless color images are detected, such images shall then be produced in color JPG or some other format agreed to by the parties. Attachments will not be produced in native file, unless the attachment(s) are spreadsheets, power points, or some other format of document that cannot be easily imaged. To the extent that issues with color productions arise in the future the parties shall meet-and-confer to resolve any issues.

(d) **Word Processing Documents.** Any word processing documents (*e.g.*, MS Word) that contain any form of redline, comments, or "track changes" shall be produced with the track changes visible in the TIFF image.

(e) **Google File Types.** When collecting Native-Google file types, e.g., Google docs, sheets and slides, they shall be exported to their Microsoft counterparts, i.e., Google docs files shall be converted to Microsoft Word files, Google sheets shall be converted to Microsoft Excel Files, etc.

(f) **Parent-Child Relationships**. Parent-child relationships (*e.g.*, the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email, and families will be associated using

attachment range Metadata. The parties acknowledge that hyperlinked files are not attachments, and they will meet and confer about their respective capability to collect and produce contemporaneous hyperlinked files.

(g) **Bates Numbering.** All documents produced in image format will include a legible, unique page identifier ("Bates Number") electronically embossed onto each page at a location that is reasonably intended to not obliterate, conceal, or interfere with any information in the document. No other legend or stamp will be placed on the images other than a confidentiality legend (where applicable), redactions (consistent with any other protective orders or applicable law), and if desired by a party, a document control number separate from the Bates Number. With respect to the identification of files produced in their native format, the parties shall identify each file produced using the Bates Number as the name, and link in the applicable load file. The Bates Numbers assigned shall: (1) be unique across the entire production; (2) maintain a consistent length of numeric digits across all documents (including 0-padding); (c) be sequential within a document; and (d) contain only alphanumeric characters with no special characters or embedded spaces.

(h) **Embedded Objects and Documents.** Embedded files (e.g., Microsoft Office files such as Word, Excel, and PowerPoint, as well as PDFs) shall be extracted and produced as separate, child documents associated with the parent document or email. Embedded objects and documents refer to actual embedded files (e.g., .DOCX, .XLSX, .PPTX, .PDF) and do not include hyperlinks, URLs, or dynamically linked external content.

(i) **Extracted Text/OCRed Text**. The parties shall extract the text of each ESI item directly from the ESI native file. The parties shall produce extracted text in a format where text can be extracted, or OCR files obtained from each produced document or image to the extent possible and subject to the inherent limitation of the quality of the image and OCR capabilities. The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software.

(j) **Redacted spreadsheets.** For redacted spreadsheet files (*e.g.*, Microsoft Excel), TIFF or .TIF versions, if produced, shall include all hidden rows, cells, worksheets as well as any headers or footers associated with the spreadsheet file. If a Producing Party applies native redactions, the Producing Party shall identify the natively redacted spreadsheet in the associated "Redacted" field. The Parties agree that native production of spreadsheets is the preferred method. An image version of a spreadsheet (e.g., TIFF) shall only be provided if the native file is not available or if there is a compelling reason requiring image production.

(k) **Metadata.** The Parties agree to produce ESI without altering existing metadata, to the extent possible, with production load files. The Parties agree and understand that not all metadata information will be available for all types of ESI but otherwise agree to produce available metadata to the extent possible and when reasonable to do so. There is no obligation to generate or create metadata not otherwise in existence. The Parties shall provide an image cross-reference file in .OPT and a Concordance-format .DAT metadata load file with a header row and standard delimiters

(field delimiter ASCII 020, text qualifier ASCII 254, multi-value delimiter semicolon). Extracted text or OCR shall be provided as separate document-level text files named by the beginning Bates number, with the relative path in an OCRPATH or equivalent field; native files shall be linked through a LINK or equivalent field. To the extent available and applicable to the document type, the metadata load file shall include the following fields:

| *Field* | *Data Type* | *Paper* | *Loose Native Files & Attachments* | *Email* |
|---|---|---|---|---|
| BegDoc | Integer – Text | Start Bates | Start Bates | Start Bates |
| EndDoc | Integer – Text | End Bates | End Bates | End Bates |
| BegAttach | Integer – Text | Starting bates number of document family | Starting bates number of document family | Starting bates number of document family |
| EndAttach | Integer – Text | Ending bates number of document family | Ending bates number of document family | Ending bates number of document family |
| Custodians | Paragraph | All custodians of the document | All custodians of the document even if de-duplicated prior to production | All custodians of the document even if de-duplicated prior to production |
| Folder | Text | | File path where original file was collected from | Folder where email was collected from. Includes folder locations within email container files such as PST and NSF |
| Confidentiality | Fixed-Length Text | Confidentiality Designation | Confidentiality Designation | Confidentiality Designation |
| Time Zone | Fixed-Length Text | | Processing Time Zone | Processing Time Zone |
| From | Text – paragraph | | | Sender of message |
| To | Text – paragraph | | | Recipients of message |
| CC | Text – paragraph | | | Copied recipients |
| BCC | Text – paragraph | | | Blind copied recipients |

| | | | | |
|---|---|---|---|---|
| Subject | Text – paragraph | | | Subject of message |
| DateSent | Date (mmddyyyy) | | | Date message sent |
| TimeSent | Time (hh:mm:ss) | | | Time message sent |
| DateReceived | Date (mmddyyyy) | | | Date message received |
| TimeRecv | Time (hh:mm:ss) | | | Time message received |
| FileName | Text – paragraph | | Name of original file | Name of original file |
| FileExtension | Text | | Extension of original file | Extension of original file |
| Last Accessed | Date/Time (mmddyyyy) | | Date file was last accessed | |
| Last Accessed By | Text | | User last accessed the data | |
| DateCreated | Date/Time (mmddyyyy) | | Date file was created | |
| DateModified | Date/Time (mmddyyyy) | | Date file was last modified | |
| Modified By | Text | | User last modified the data | |
| Title | Text – paragraph | | Title from document metadata | |
| Author | Text – paragraph | | Document author from metadata | |
| Hash | Text | | Hash Value | Hash Value |
| NativeLink | Text – paragraph | | Link to native file if produced (Relative Path) | Link to native file if produced (Relative Path) |
| Text Link | Text – paragraph | | Link to text (extracted text or OCR) produced. Relative path | |
| ConversationIndex | Long Text | | | Email client thread identifier |
| MessageID | Long Text | | | Unique internet message identifier from email header |
| InReplyTo | Long Text | | | Header value identifying the MessageID of the |

| | | | | |
|---|---|---|---|---|
| | | | | parent message replied to |
| References | Long Text | | | Header value listing MessageIDs of preceding messages in the thread |

The Parties shall not be required to create metadata that does not exist or cannot reasonably be extracted.

(l) **Production of Hard Copy Documents.** All hard copy Documents will be scanned as described above in (a) and produced in electronic form and to the extent possible will be OCRed. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color documents will be provided in JPG file format. To the extent practicable, hard copy Documents shall be produced in the manner in which those Documents were kept in the ordinary course of business.

Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable. The Parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

**Miscellaneous.** The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in

good faith to reach agreement regarding these issues and the appropriate form of production and will seek Court intervention if necessary.

## VIII. DE-DUPLICATION

Each Party will make reasonable efforts to globally de-duplicate exact duplicate Documents within the Party's ESI data set across all custodians at the family level. Documents should be deduplicated at the family level using MD5 hash values, or SHA-1 hash values, or the SourceHash value generated by Google for Google Drive documents, or comparable industry standard hash algorithm disclosed by such Party. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact Hash Value matches. Hard-Copy Documents shall not be eliminated as duplicates of ESI.

The Parties agree that an e-mail that includes content in the "bcc" or other blind copy field shall not be treated as a duplicate of an otherwise identical e-mail that does not include content in the "bcc" or other blind copy field.

To the extent that deduplication is used, the Parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial.

## IX. PRIVILEGE AND REDACTIONS

(a) **Privileged Information and Attorney Work Product.** Pursuant to Rule 502(d) of the Federal Rules of Evidence, nothing herein will require the disclosure of privileged or work product protected information, and the inadvertent production of privileged information is not a waiver of the privilege log or protection from discovery in

this case or in any other federal or state proceeding. This Order will be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Rule 502(b) do not apply. Instead, inadvertence will be determined solely based on the good faith representation of the Producing Party. Fed. R. Civ. P. 26(b)(5)(B) governs the proper procedure for the notification and return of privileged information when identified by the Producing Party. Nothing herein will prevent a receiving Party's right to object to the privileged nature of the document. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

(b) **Redactions.** A Producing Party may redact ESI that the Producing Party claims is subject to attorney client privilege and/or work product protection. Relevance redactions are not permitted. The Parties are permitted to redact PII of non-parties (such as DOBs, SSNs, account numbers) and need not log such redacted documents on a redaction log. The Parties will not redact PII of Plaintiffs, FLSA opt-in Plaintiffs, Rule 23 Class Members, and Defendants, except for Defendants' financial account numbers, which will be redacted so that only the last four (4) digits are visible. The privilege designation will be available on the face of the document, which should indicate redactions on privilege grounds (e.g., work product, attorney client privilege, privacy (PII) etc.). A Requesting Party may request additional information if the nature of the privilege is not apparent on the face of the document.

(c) **Claims of Privilege and Privilege Log.** The Producing Party must furnish a log of all documents withheld from production on the basis of attorney-client and/or work-product privilege ("Privilege Log") within fifteen (15) days of production. To the extent a Producing Party needs more time, the Parties will meet and confer. Consistent with Fed. R. Civ. P. 26(b)(5), the Producing Party's Privilege Log will contain the following information:

- Prod Bates Beg (where applicable)
- Prod Beg End (where applicable)
- Number of pages
- Document type
- Document date
- Subject/file name
- File author
- To
- From
- CC/BCC
- All participants
- Privilege designation (type)
- Privilege description
- Redaction or withheld

(d) A Party need only log the topmost e-mail in a thread so long as the description of the subject matter includes enough information sufficient to demonstrate the privilege, including a list of all participants in the email thread.

(e) Documents comprising attorney-client communications and/or attorney work product relating to the litigation and dated after the start of the litigation need not be included on a privilege log.

(f) To the extent available, individuals should be identified with enough information to identify why the privilege attaches, such as name and job title or other justification for assertion of privilege.

If the Requesting Party objects to a document (or part of it) being withheld or redacted as privileged, it shall meet and confer with the Producing Party. Should the Parties not be able to agree to a resolution of the dispute, the Requesting Party shall submit the dispute to the Court.

IT IS ORDERED that the foregoing Order is approved.

DATED this 17th day of November, 2026.

BY THE COURT:

N. Reid Neureiter

Hon. N. Reid Neureiter
United States Magistrate Judge

APPROVED and SUBMITTED ON NOVEMBER 13, 2026.

DAWSON MORTON, LLC

*s/ James Knoepp*
James Knoepp
1612 Crestwood Drive
Columbia, SC 29205
Tel: 828-379-3169
jim@dawsonmorton.com

Dawson Morton
DAWSON MORTON, LLC
1808 Sixth Street
Berkeley, CA 94710
Tel: 404-590-1295
dawson@dawsonmorton.com

*ATTORNEYS FOR PLAINTIFFS*

FISHER & PHILLIPS LLP

*s/ Vance O. Knapp*
Vance O. Knapp
1125 17th Street, Suite 2400
Denver, CO 80202
Tel: (303) 218-3650
vknapp@fisherphillips.com

Rebecca Hause-Schultz
FISHER & PHILLIPS LLP
621 Capitol Mall, Suite 2400
Sacramento, CA 95814
Tel: (916) 210-0391
rhause-schultz@fisherphillips.com

Monica L. Simmons
FISHER & PHILLIPS LLP
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
Tel: (215) 230-2129
msimmons@fisherphillips.com

*ATTORNEYS FOR DEFENDANTS*